CASE 34—PETITION EQUITY—OCTOBER 24.

## Prewitt, Trustee, &c., v. Trimble.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. WHERE ONE PERSON INDUCES ANOTHER TO ENTER INTO A CONTRACT BY A FALSE REPRESENTATION which he is in a situation to know, and which it is his duty to know, is untrue, he, in contemplation of law, does know the statement to be untrue, and consequently, it is to be held fraudulent, and the person injured has a remedy for the loss sustained, either by an action for damages or for rescission.

2. INNOCENT MISREPRESENTATION—REFUSAL TO RELINQUISH ADVANTAGE.—Even where one who brings about a contract by misrepresentation commits no fraud, because his representation was, when made, innocent in the ordinary sense, still, if when the fact of its falsity becomes known he refuses to relinquish the advantage upon offer of reciprocal relinquishment by the injured party, he is guilty of constructive fraud and the contract subject to rescission by a court of equity.

3. THE PRESIDENT OF A BANK IS LIABLE TO A PERSON WHO HAS SUFFERED LOSS BY A FALSE STATEMENT OR REPORT OF ITS AFFAIRS,

Prewitt, Trustee, &c., v. Trimble.

officially made or approved by him, especially when he has been thereby personally benefited.

A published statement by the cashier of the condition of a bank, followed by a statement signed by the president and directors, referring to the cashier's statement as evidence of the prosperous condition of the bank, is to be regarded as a report of the affairs of the bank made directly by the president and directors; and the statement being false, in that the amounts reported as "loans and discounts," and "overdrafts," embraced stale and worthless demands, amounting to a large sum, thus reducing the value of the stock much below what it appeared to be from the statement, one who purchased stock from the president of the bank upon the faith of this statement is entitled to a rescission of the contract.

ED. C. O'REAR, Z. TAYLOR YOUNG for appellant.

1. If appellee, Trimble, *knew* of the faulty condition of the bank and represented it to be sound, there can be no question as to his liability to appellant. (Seals v. Baker, 70 Texas, 283.)

2. But it is not necessary that he should have known of the unsoundness of the bank in order that his statements may amount to fraudulent representations. (Reese River Co. v. Smith, L. R., 4 H. L., 64; Edgington v. Fitzmaurice, L. R., 29, Ch. D., 459; Foard, &c., v. McComb, 12 Bush, 723; Bigelow on Fraud, pp. 410, 412 and 415; Cole v. Cassiday, 138 Mass., 437.)

3. The president of a bank will not be heard to say that he did not know facts it was his duty to know. (Morse on Banks and Banking, sec. 137; Main v. Mills, 6 Biss, 108; Lou. City Nat. Bank v. Loving, &c., 6 Ky. Law Rep., 328; German Savings Bank v. Wulfekuhler, 5 Cent. L. J., 366; Merchants' Bank v. Rudolph, 5 Neb., 527; United Society of Shakers v. Underwood, 9 Bush, 609; Morse on Banks and Banking, 90 et. seq., 97, et. seq., and 115; Seals v. Baker, 70 Texas, 283; Bigelow on Fraud, 516; Hallmark's Case, 9 Ch. D., 329.)

4. If a purchaser of stock made his purchase relying upon material statements in corporate reports, which were false, he has his remedy against all persons who knowingly made or issued the report. (Scott v. Dixon, 29 L. J., (Ex.) 62; Cross v. Sackett, 2 Bosw., 617; Morse v. Sints, 19 Hon. Pr., 175; Graves v. Lebanon Nat. Bank, 10 Bush, 23.)

5. An innocent misrepresentation ceases to be innocent when the party who makes it undertakes, after learning of its falsity, to maintain the advantage gained by means of it. (Bigelow on Fraud, p. 520.)

6. Equity has jurisdiction to grant the relief sought. (Bigelow on Fraud, 410–412; Hill v. Lane, L. R., 11 Eqr., 215.)

WOOD & DAY for appellee.

1. The statements of defendant only amounted to an opinion and not to a warranty, and plaintiff could not recover damages if this were a suit

Vol. 92—12

at law. (Wait's Actions and Defenses, vol. 8, p. 275; Gordon v. Butler, 105 U. S., 553; Cooper v. Schlessinger, *et al.*, 111 U. S., 148.)

2. A rescission can not be had in the absence of allegation and proof of actual fraud. (Stewart v. Daugherty, 3 Dana, 480; Buford v. Brown, 6 B. M.; Mathey v. Wood, 12 Bush, 293.)

3. The president of a bank, selling stock of the bank that he owns himself, is only bound by representations he makes at the time of the sale, and a rescission can not be had except in cases of absolute fraud. (Cook on the Law of Stock and Stockholders, secs. 320 and 330–336; Wakeman v. Dally, 51 N. Y., 27; Thompson on Liability of Officers and Agents of Corporations, p. 299.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

January 19, 1888, appellee, then president of the Exchange Bank of Kentucky, at Mt. Sterling, sold and transferred to appellant twenty shares of stock in that bank at the price of one hundred and twenty dollars per share, and twenty-one shares in the Mt. Sterling National Bank at one hundred and twenty dollars per share for twenty shares and one hundred and eighteen dollars for the remaining one, payment for which was then made, partly in notes assigned to and received by appellee at their face value, and partly in money.

May 14, 1888, appellant brought this action for rescission of the contract and restoration of the notes, or if collected, payment of amount thereof, and the money received by appellee and interest on the whole; it being alleged and not denied, a tender and offer to retransfer the stock and demand of repayment of the purchase price had been made by appellant and refused by appellee.

It appears that December 31, 1887, a statement of resources and liabilities of the Exchange Bank of Kentucky, signed by the cashier, was published in the newspapers of Mt. Sterling, and by printed cards which were generally distributed; there being at foot of the state-

ment an announcement the bank had declared its usual semi-annual four per cent. dividend. There was printed on the same card a statement signed by the president and directors, in which the cashier's statement was referred to as evidence of the prosperous condition and increasing business of the bank.

According to that statement the resources of the bank, having a capital of $100,000, amounted to $329,380.42, of which $245,790 were loans and discounts and $13,338.68 overdrafts, while the undivided profits were $15,851.41. But no mention was made of any insolvent debts being part of the aggregate of either loans or overdrafts.

In respect to the statement it is alleged and appears that of the total amount of loans and discounts more than $30,000 consisted of stale and worthless demands, and of overdrafts at least $7,000 were likewise worthless, the drawers being insolvent; and that after charging off such worthless demands there would be left in the bank no undivided profits at all. It is further alleged and proved that the books of the bank showed, at date of the statement, about $7,600 more due to depositors, and consequently that much more liabilities than disclosed by it.

The evidence places beyond question that when the statement was published and circulated the real value of stock in the Exchange Bank of Kentucky, calculated and determined by the actual condition of its resources and liabilities, was not over seventy dollars per share. It is also satisfactorily shown that when he made the purchase appellant did not know, nor have any other means of knowing, the true condition of that bank's affairs than such information as was afforded by the cashier's state-

ment, and that given directly to him by appellee, and that he believed and acted on that information.

There is discrepancy in the testimony of the parties as to what occurred between them when the contract was made. But that of another person present at the time is substantially that appellee said, if not directly to, in hearing of appellant, that the notes held by the Exchange Bank of Kentucky were worth dollar for dollar, and being asked about value of the stock, took in his hands the card upon which was printed the cashier's statement, one of which he had, on a previous occasion, in person, given to appellant, and referring to it explained that the capital being $100,000, the surplus of $15,000 made the stock worth one hundred and fifteen dollars per share, and more, as an investment, and that it was going at one hundred and twenty dollars.

But independent of what occurred between the parties at the time of the contract, it is manifest the cashier's statement was published and circulated by authority of the president and directors for the purpose and in expectation of it being accepted and treated by the public as in all respects true and reliable ; thereby not only increasing business of the bank, but keeping up or enhancing market value of the stock in which each of them had a personal interest. And as their own accompanying statement was obviously intended to be, it should be regarded a deliberate affirmation of the truth of that of the cashier, and as equivalent to a report of the affairs of the bank made directly by them. And if so, upon both principle and authority no other relation or privity between the parties to this action need be shown than the act of appellee, as president, endorsing and authorizing

publication and circulation of the cashier's statement, and the resulting injury to appellant, who was within the class designed to be influenced by the statement. (Cook on Stock and Stockholders, sections 353 and 354, and cases cited.)

Whether they published and gave currency to the statement, knowing it to be materially untrue, and for the fraudulent purpose of deceiving the public as charged in the petition, we need not inquire, for it is not, in order to maintain this action, indispensable that appellee be shown to have known the statement was false.   For it is elementary doctrine that a false representation may, in contemplation of law, be made with knowledge of its falsity, that is, made *scienter*, so as to afford a right of action in damages, and, *a fortiori*, ground for equitable proceedings (1) without actual knowledge of either its truth or falsity, as when the party has affirmed his knowledge by a positive statement which implies knowledge (2) when made under circumstances in which the party ought to have known, if he did not know, of its falsity ; as when having " special means of knowledge," it is his duty to know. (Bigelow on Fraud, 509 and 516.)

In Story's Equity, section 193, it is laid down that "affirmation of a material fact that one does not know or believe to be true, is, equally in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive, for it operates as surprise and imposition on the other."

Representations by a party having means of knowledge in regard to a matter, not possessed generally, are apt to be believed and acted upon, especially if he is in a

situation where he owes a duty to the public to deal hon-
estly and intelligently. Therefore, something more than
use of ordinary diligence to know the condition of a
bank should be required of the president in order to ex-
empt him from liability to a person who has suffered loss
by a false statement or report of its affairs officially made
or affirmed by him, especially when he has been thereby
personally benefited.

In Cook on Stock and Stockholders, section 145, it is
said on authority of numerous cases cited, that any state-
ment by the authorized agents of a corporation in regard
to the status of the corporation, or material matters con-
nected therewith, whereby subscriptions of stock are
obtained, is a fraudulent representation, for which a per-
son sustaining loss thereby may hold such agents person-
ally liable, or have the contract rescinded. This is upon
the principle and for the reason that such agents have
exceptional means of knowledge, and owe a duty to speak
the truth, or not at all, about the matter. But as observed
by the author, " in all these cases, the distinction between
statements relative to the prospects and capabilities of
the enterprise, and statements specially specifying what
does or does not exist, must be carefully borne in mind."

In this case not the bank, but appellee personally,
profited by the bargain appellant was induced by the
false report or statement of its condition to make with
him; and, therefore, it would be contrary to reason and
justice for him to be permitted to enjoy the benefits of it
at the expense of appellant, upon the flimsy ground of
ignorance about the material matters in reference to
which he made the deliberate and positive representation.
For leaving out of view the question whether he did in

fact, know the statement was untrue, being in a situation to know and where it was his duty to know, he, in contemplation of law, did know it, and consequently, such statement is to be held fraudulent; and appellant has a remedy for the loss sustained, either by action in damages, or for rescission. For it is a settled rule, that even when one who brings about a contract by misrepresentation commits no fraud, because his representation was, when made, innocent in the ordinary sense, still, if when the fact of its falsity becomes known he refuses to relinquish the advantage, upon offer of reciprocal relinquishment received by the injured party, it would make him guilty of constructive fraud, and the contract subject to rescission by a court of equity.

In our opinion appellant, as the record stands, was entitled to a rescission of the contract, as prayed for in his petition, and the court had jurisdiction to grant it.

Wherefore the judgment is reversed and cause remanded for judgment in favor of appellant.

Judge Holt not sitting.