CASE 97—PETITION ORDINARY—JUNE 14.

Trimble v. Reid.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. THE PRESIDENT OF A BANK MAY BE HELD LIABLE IN AN ACTION FOR
   DECEIT for a false statement of material matters affecting the
   value of the stock of the bank (1) where he has actual knowledge
   that the statement is false; (2) where the false statement is made
   without any reasonable knowledge *bona fide* to believe it to be
   true; or (3) where it is made in reckless disregard of its truth or
   falsity. Provided always that the party complaining and to
   whom damage has resulted has relied on such false statement in
   making the contract complained of.

2. FALSE STATEMENT OF CONDITION OF BANK—CONSTRUCTIVE KNOWL-
   EDGE.—While there may be cases of constructive knowledge or of
   imputed knowledge on the part of the president and directors of
   a bank sufficient to hold them liable for false statements made,
   yet the facts on which this constructive knowledge is made to de-
   pend should be found by a jury under appropriate instructions
   and not be assumed by the court conclusively to exist.

A. T. WOOD FOR APPELLANT.

To entitle the plaintiff to recover in this action he must prove
   that defendant caused to be published the statements as to the
   condition of the bank and that they were false in a material de-
   gree, and either known by him to be false or published by him
   without an honest belief that they were substantially true. And
   the court erred in not giving an instruction asked by defendant
   embracing this view.   (Board of Comm's'rs of Tippecanoe County
   v. Reynolds, 44 Ind.; s. c. 15 Am. Rep., 245; Cook on Stock and

Stockholders, sec. 355; Wakeman v. Dally, 51 N. Y., 27, reported
in Thompson on Liability of Officers and Agents of Corporations,
p. 299; Derry et al v. Peek, Law Reports, 14, App Cas., 337, 359;
Arthur v. Griswold, 55 N. Y.; Nelson v. Lulling, 62 N. Y., 645;
Schwenck v. Naylor, 102 N. Y., 628; Bellaires v. Tucker, L. R. 13,
Q. B. D., 563, note to sec. 355 of Cook on Stock and Stockholders;
Ball v. Liveley, 4 Dana, 369; Campbell v. Heilman, 15 B. M., 517;
Warren v. Barker &c., 2 Duv., 156.)

REID ROGERS, O'REAR & BIGSTAFF AND SMITH HURT FOR AP-
PELLEE.

Brief not in record.

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

This is an appeal by J. G. Trimble from a judgment of the
Montgomery Circuit Court against him in favor of Mrs. E.
J. Reid, for the sum of $1,525.

This suit was filed by appellee, alleging substantially the
following state of fact:     That in February, 1887, and in
July, 1887, she purchased of defendant, J. G. Trimble, thirty-
three shares of stock of the Exchange Bank of Mt. Sterling,
Ky., at the sum and price of $120 per share, and paid him
for same. That at the time of said purchase, and in order to
induce appellee to make same, Trimble stated that said
stock was worth $120 per share; that the book value of same
was $110 to $115 per share; that said bank had regularly
declared a semi-annual dividend of four per cent.

And appellee further charges that appellant being the
president of said bank at the time, on a salary, had, at the
regular semi-annual periods next before each of said sales,
caused to be published the card statement of the condition
of said bank, sworn to by the cashier and endorsed on
the back by the president and the directors of said bank,
calling attention to same and soliciting business on the faith
of same.    That in this statement were gross errors affecting

the value of said stock in this, that of the loans and dis-
counts, as published in said card, the sum stated ex-
ceeded by thirty thousand dollars or more the actual *bona
fide* loans and discounts held by said bank. That of the
amount stated as held by said bank in over-drafts, some
$7,500 was utterly worthless, old and stale claims. That in
the item stated as due depositors same was stated at $7,500
less than was really due to same. That as to the undivided
profits claimed as on hand in said bank at $14,000 to $15,000,
that there were no undivided profits, and appellee said, that
in these matters, both the personal obligations of ap-
pellant, made to induce this purchase, and the published
statement of the bank, were false and untrue in point of fact,
and that appellant knew them to be untrue at the time they
were made and published, and were made with the fraudu-
lent intent and purpose of deceiving the agent who pur-
chased this stock for appellee, and of inducing him to pur-
chase same at a price greatly in excess of its true and real
value. That he, this agent, relied on said statement of the
condition of the bank as well as on the personal represen-
tation of appellant in making said purchases.

Appellee says further that by reason of these several er-
rors and false statements in this bank publication, the
stock was not in fact and in truth worth more than $70 per
share at the time of said purchase.

That the officers of the bank made the published state-
ments, as charged (same being copied into the petition), was
not denied by appellant, though he denied all knowledge as
to the errors or false statements charged to be in same, and
denied all fraud, denied that he sold the first twenty-five
shares to appellee at all, denied that he owned said twenty-
five shares of stock, but said they belonged to a Mrs. Allen,
and that Thompson and Jones were her agents in the sale of

Trimble v. Reid.

same. The evidence conduced to establish the truth of these latter statements. And denies that he had any personal interest in either of the sales, but admits that he acted as agent for Mize in the sale of the last eight shares of the stock bought by appellee in July, 1887.

Neither Mize nor Mrs. Allen was made a party defendant in the suit.

This petition, it will be observed, was, in all its essential features, an action for deceit, and it was essential to allege, as it did, the false statements, whether personally or by the published statement of the bank. And that appellant knew them to be false when made, as well as that he made them with the fraudulent purpose to deceive appellee's agent in making the purchases.

The petition thus framed presented a good cause of action, and had the case, as charged in the petition, been submitted to the jury by proper instructions we can not say that we would be inclined to disturb the verdict.

The instructions, however, did not follow the case as stated in the petition, but made a wide departure from same.

By the first and second instructions asked by appellee and given by the court, the jury were told, in substance, that it was admitted by the appellant that the statement of the assets and liability of the bank were published, as stated by appellee in her petition, substantially as pointed out heretofore. And that if the jury believed, from the evidence, that said published statement was untrue, to any material degree, and that said published statement was read and relied on by the plaintiff's agent in making the purchase of the stock as described, then they will find for plaintiff.

Thus it will be seen omitting altogether from the question submitted to the jury any inquiry as to whether the appellant *knew that said statement was false*, or whether he made

or published same with any fraudulent intent or purpose, either generally to deceive the public or those dealing with the bank or dealing with each other on the faith of such published statement, or to particularly deceive the agent of appellee in purchasing this stock. This matter of knowledge of the falsity of these statements or some of them, going materially to the merits of the case, was of the very essence of this action of deceit, and upon which, and upon which only, could this action be maintained.

This defect in instructions one and two as pointed out is not cured by the third instruction, also asked and given by the court. It is as follows: "No. 3. The court instructs the jury that it was the duty of defendant, Trimble, after having been president of the Exchange Bank for a reasonable length of time, to have known of any discrepancy, if any, between the note and bill register and the notes actually on hand, that the jury may find existed at the dates of the purchases of the bank stock by plaintiff's agent, Rogers, as aforesaid, and to have known of any discrepancy between the general and individual ledger, if any, such as the jury may find existed at that time, and to have known the amount of the worthless over-drafts, if any, such as the jury may find existed at that time. And the defendant, after such reasonable length of time, can not rely upon lack of knowledge of any such discrepancies or worthless assets as a defense to this action."

This instruction like the other withholds from the jury all investigation as to whether appellant at the time of the publication of these bank statements knew that they contained false statements, materially affecting the value of this stock sold, or that he published same with the fraudulent intent and purpose of deceiving either the general public, or of this particular purchaser.

Thus abandoning the charge as made in the petition, and substituting in its stead a question of diligence or want of diligence in the discharge of his duty as president of the bank, for the one of knowingly making a false statement or of fraudulently making these false statements before referred to.

This departure from the allegations of the petition, and the substitution of one thing for the other, is attempted to be justified under the decision of this court in the case of Prewitt v. Trimble, 92 Ky., 176.

In this, however, counsel for appellee forget or overlook the fact that this case is widely different from that in this, that in that case, assuming the condition of the bank to be the same, and the errors in the statements of the president of the bank as to its assets and liabilities the same as in this case, yet that case was upon a contract made by Prewitt's trustee with Trimble, whereby Trimble on these statements *sold his own stock* to Prewitt, at the price of $120 per share, and that suit was for a rescission of that contract, brought within a reasonable time, and tendering back the stock purchased. In such a case the law is materially different from the law in an action for deceit as in this case. Here the evidence shows that Trimble was not the owner of any of the stock sold, and that as to the Mrs. Allen stock he was not her authorized agent, though he negotiated the sale.

In that case it was only necessary to show that the false or erroneous statement was made; that it formed the basis of the contract. That said statements entered into the price paid, and received by the vendor for his stock, that the statements were relied upon by the party purchasing, and that they were in fact untrue at the time, and that by reason of same a price was paid far in excess of the true value of the

stock sold.  In such a case the court will, on these facts, re-
scind the contract without any fraudulent intent being
shown, without any knowledge actual or constructive on
the part of the vendor that the statements were in fact false.

So that while the statements and conclusions of the
court were strongly against the vendor of the stock in the
case of Prewitt v. Trimble, we are not prepared to say
that on the facts of the case then under consideration they
were erroneous.

Speaking on this subject Mr. Cook in his work on Stock
and Stockholders, sec. 355, says:  "In order to sustain an
action for damages for deceit whereby plaintiff was induced
to buy or sell shares of stock, it is necessary for plaintiff to
prove that statements were made, or acts done, which were
fraudulent; that the person guilty of them knew they were
fraudulent, and that the plaintiff acted on such statements
in buying or selling said stock."

In the case of Wakeman v. Dalley, 51 N. Y., 27, the court
speaking of a case wherein the paid-up capital stock of the
company was stated to be $150,000, said:  "There is no
proof that Dalley knew that the statement was false, or that
he made it with the intention to deceive any one.  Such
knowledge and intent can not be presumed, but must be
proved."

Other cases of our own court might be cited sustaining
the general proposition that some knowledge of the falsity
of the statement made is essential.

In reference to bank officers, and, especially to the pres-
ident of the bank, the rule in Kentucky seems to be ex-
tended, looking to certain states of case where such officer
may be held to have this constructive knowledge.

In the case of the United Society of Shakers v. Under-
wood, and others, 9 Bush, 609, this court said:  "It is the

duty of bank directors to use ordinary diligence to acquaint themselves with the business of the bank, and whatever information might be acquired by ordinary attention to their duties, they may, in a controversy with persons transacting business with the bank, be presumed to have. They can not be heard to say, that they were not apprised of the facts shown to exist by the ledger, books, accounts, correspondence . . . and statements of the bank, and which would have come to their knowledge, except for their gross neglect or inattention."

In the same case it is further said: "The community has the right to assume that the directors do their duty and to hold them personally liable for neglecting it."

Again, in Graves v. Lebanon Bank, 10 Bush, 23 and 32, in speaking of a false statement as to the condition of the bank involving some dereliction of duty of its cashier, and of the liability of the sureties on the cashier's bond, the court, assuming that the sureties read and relied on such statements, said: "A fraud may be perpetrated by the assertion of facts that do not exist, ignorantly made by one whom the person acting upon the assertion has a right to suppose has used reasonable diligence to inform himself, as by concealing facts known to exist."

Again, it is said in Cooper v. Schlesinger, 111 U. S., 148, that "a statement, recklessly made without knowledge of its truth, but which is really false, is a false statement, knowingly made, within a settled rule."

Thus, while it is true that there may be cases of constructive knowledge or of imputed knowledge, on the part of the president and the directors of a bank, sufficient to hold them liable for false statements made, yet the facts on which this constructive knowledge is made to depend should be found by a jury under appropriate instructions, and not be as-

sumed by the court conclusively to exist, as was done in the third instruction in this case.

We gather from the authorities that the president of a bank may be held liable in an action for deceit for a false statement of material matters affecting the value of the stock of the bank:

1st. Where said false statement is made and the president has actual knowledge that it is false.

2d. Where a false statement is made, but without any reasonable knowledge *bona fide* to believe it to be true. Or

3d. Where it is made in reckless disregard of its truth or falsity.

And under appropriate instructions framed on this line the question should always be submitted to the jury. Of course, in all cases assuming it as proving that the party complaining, and to whom damage has resulted, has relied on such statements in making the contract complained of.

It may further be remarked that this question of fraudulent intent or guilty knowledge can not often be proved by direct evidence, but must, in nearly all cases, be supported by circumstantial evidence, leaving the main fact to be found by the jury from other facts present. It is quite proper that every fact and circumstance bearing on this question of knowledge, actual or constructive, within the lines indicated are competent in evidence. This seems to have been the view of the court below on the trial, and is, therefore, unobjectionable.

Wherefore for the error indicated this cause is reversed and remanded for further proceedings not inconsistent with this opinion.

Judge Hazelrigg not sitting in this case.