CASE 20—PETITION ORDINARY.—FEBRUARY 9.

# Ward v. Trimble.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. SALE OF BANK STOCK—FRAUD AND DECEIT—KNOWLEDGE OF PRESI-
DENT.—The president of a bank, as• between himself and parties
not having equal means of knowledge of the bank's condition,
will be conclusively presumed to have such knowledge, and the
presumption can not be avoided by showing that he did not in
fact have it; but this rule does not apply to the director of a
bank, and while a statement of the bank's condition published
and circulated over the signature of its directors would be *prima
facie* evidence that they knew whether the same was true or
false, a director may, by proof, rebut this presumption.

TYLER & APPERSON FOR APPELLANT.

1. Where the president of a bank sells his own stock therein, upon
representations made at the time of the sale, and embraced in a
printed statement of the condition of the bank, which he refers
to and approves, if the vendee relies upon these representations,
they are in effect a warranty for which he may institute an
action in damages, if broken. Lamme v. Greeg, 1 Met., 444;
Trimble v. Reid, 17 Ky. Law Rep., 494; Prewitt's Trustee v.
Trimble, 92 Ky., 176.
2. The president of a bank is conclusively presumed to know its con-
dition, and this presumption can not be rebutted. Trimble v.

Reid, 17 Ky. Law Rep., 494; Prewitt's Trustee v. Trimble, 92 Ky., 176.

3. The verdict is flagrantly against the weight of the evidence, and the judgment should be reversed for that reason

A. T. WOOD FOR APPELLEE.

1. The instructions given in this case are the same as those given in the cases of Trimble v. Ward, 17 Ky. Law Rep., 508, and Trimble v. Reid, 17 Ky. Law Rep., 494, which were approved by this court in those cases.

JUDGE WHITE DELIVERED THE OPINION OF THE COURT.

On January 20, 1888, the appellee, J. G. Trimble, who was the president of the Exchange Bank of Kentucky, located at Mt. Sterling, Ky., sold to the appellant, Eliza C. Ward, fifteen shares of the stock of the bank at the price of $120. per share. This bank stock was the property of appellee, Trimble. The bargain and sale was made on the part of appellant, through her agent, M. S. Tyler.

In March, 1892, appellant brought this action in the Montgomery Circuit Court for damages in the sale of the bank stock, alleging that appellee, at the date of the sale to her agent, and while the negotiations for same were pending, the appellee referred to a published statement of the bank dated December 31, 1887, which was signed by appellee as president, and was published and circulated by him, in which statement, the resources of bank were stated to be $329,386.42, of which $245,798.51 were loans and discounts, $13,338.68 overdrafts, and the undivided profits stated at $15,852.41; the amount due depositors, $209,200.39, and at the time the appellee represented that said bank statement was correct and also stated at the same time that all the bad debts due the bank had been charged off its books,

with the exception of a small amount and that its assets were worth dollar for dollar.

Appellant alleged that said bank statement was incorrect and false, and appellee's statements were not true, and that he knew at the time, the bank statement and the statements made by him were incorrect and untrue. Appellant alleges that in fact the resources and assets were not as much by thousands of dollars as stated, and the amount due depositors was greater by thousands of dollars than stated, and that in reality there were no undivided profits; in fact, no profits at all, but losses, so that the stock of the bank was worth only $65 per share, instead of $120, as the statement and representation showed same to be worth, and she asked damages in the sum of $825, being the difference in the price from that paid and the real value.

Appellee, by his answer, admitted the sale of the bank stock at $120 per share, and alleged that the sale was made to appellant through her agent, M. S. Tyler, who, at the time of the sale, was a director in the bank. Appellee denied making any statements or representations to Tyler as to the condition of the bank that were not true; denied that he knew the statement of the bank as published was not true; denied that the value of the stock was only $65 per share.

In a second paragraph of the answer appellee alleged that at the date of the sale to Tyler as agent of appellant, that Tyler was a stock holder, director and attorney for the bank, and that he had the opportunity to know and did know of the condition of the bank and its resources and liabilities, and that the statement of the bank of December 31,

1887, as stated in the petition, was signed by M. S. Tyler, a director of the bank, the same person who was the agent of appellant in the purchase of the stock.

· In a third paragraph, appellee pleads for answer that he was the president of the bank at the time the statement was made out, and that M. S. Tyler and others named were directors, and one Thompson was cashier, and that the cashier was a good bookkeeper and cashier and was regarded by the directors and business community as a man of integrity, capacity and correct in business, and that the bank statement of December 31, 1887, was made out by said Thompson, and that relying on the character and business capacity of Thompson, appellee believed said statement to be true, and that when he and the board of directors, Tyler, with the others, published the statement, they did so with the honest belief that it was true and without any intention to deceive the public, the appellant, or any one else. ·

Upon the issues made, the case was tried before a jury. There were two mistrials, juries failed to agree. The third resulted in a verdict for the appellee (defendant below).

After the reasons and motion for new trial were filed and overruled, this appeal is prosecuted.

The court on the trial gave only two instructions, which read as follows:

"The court instructs the jury that if they believe from the evidence that about January 20, 1888, the defendant, Trimble, sold and transferred to the plaintiff, through her agent, Tyler, fifteen shares of the capital stock of the Exchange Bank of Kentucky, at the price of $120 per share, and that at the time of the sale of said stock or during the pendency

of negotiations for the sale of the same, the defendant, Trimble, referred to the published statement of the bank, dated December 31, 1887, in which the resources of said bank were stated . . . . and represented and stated to plaintiff's agent that said bank statement was correct, and that all the bad debts had been charged off its books, except a small amount, and that its assets were worth dollar for dollar, and if they further believe from the evidence that said statements and representations were made to plaintiff's agent with the intention that said agent should rely upon them, and he did rely upon them, in making the purchase, and if they further believe from the evidence that said representations or statements, if made, were untrue and were known or believed by Trimble to be untrue to a material extent, either in that the assets were not worth dollar for dollar, or in any other respect, which, in a material degree, decreased the amount of the good and solvent assets of the bank, or increased its liabilities, and said statements or representations were not known to or believed by plaintiff's agent to be untrue at the time of the purchase of the said stock, then they should find for the plaintiff the difference, if any, between the actual value of the stock bought by the plaintiff through her agent at the time of the sale, if said statements were false, and its value at the time of sale, if said statements and representations had been true, not exceeding $825, and they may or not, in their discretion, give interest at the rate of 6 per cent. per annum from the time of the sale."

2d.   "Unless the jury believe from the evidence that defendant made the statements or representations as set out in

the first instruction at the time of sale, or during the pendency of negotiations for sale, and that such statements or representations as made were untrue and known or believed by defendant to be untrue, then they should find for the defendant."

These two instructions were given in a case between these same parties when appellee sold the stock as agent of one Day. In that case the verdict and judgment was for appellant, Ward, and appellee appealed. Trimble v. Ward, 17 Ky. Law Rep., 508. This court affirmed that judgment, saying: "The liability of defendant was not made to rest on any constructive knowledge or any imputed knowledge, by reason of the position as president, which he occupied, but upon his actual knowledge, and this exposition of the law was, we think, more favorable to defendant than the court, under the facts, would have been authorized to lay down." However, the court affirmed that case, because the error committed was in favor of the appellant there, and being so, he would not be heard to complain.

On the trial herein, the appellant, Ward, asked and the court refused to give instructions A and B. The refusal to give these two are assigned as error in the motion for new trial. "A" is after the view of the law as given in instruction one. "B" is as follows: The court further instructs the jury that the defendant, Trimble, as president of the Exchange Bank of Kentucky, was in a situation to know, and it was his duty to know, whether the published statement of the assets and liabilities of said bank, dated December 3d, 1887, over his name as such president, was true or untrue, in a material respect, as to the amount of the assets

and liabilities of said bank, and if said statement was in fact untrue in a material respect as to the amount of the said bank's assets or liabilities at the date of the said statement, and said statement, was published or circulated with his knowledge and consent, then in contemplation of law, the defendant did know it to be untrue in such respect, and if the jury believe from the evidence that plaintiff's agent, Tyler, in making the purchase for plaintiff of the defendant's stock in said bank relied on said published statement as true and believed the same was true, and was thereby induced in whole or in part to make, and did make, the purchase of said stock from defendant at a price greater than its value, then said statement was in law fraudulent as to the plaintiff, and she is entitled to recover of the defendant, and the jury will find for her the amount of loss, if any, they may believe from the evidence she has sustained, by reason of her said purchase, and the measure and extent of damages are as defined in instruction number one."

This instruction "B" should have been given, for, as said by Chief Justice Lewis in Prewitt, Trustee, v. Trimble, 92 Ky., 182, "For leaving out of view the question whether he did in fact know the statement was untrue, being in a situation to know and where it was his duty to know, he in contemplation of law, did know it, and consequently, such statement is to be held fraudulent."

The president of a bank, as between himself and parties not with equal means of knowledge of the bank's condition, must be held to know the condition of the bank and consequently whether the statement published as to its condition is true or false. In such cases the presumption of knowl-

edge by the president can not be avoided by showing that he, in fact, did not know.

This harsh rule does not apply, however, to the director of a bank. In an action against a bank, it would not be allowed to say, that its directors were ignorant of the bank's condition, for in such case the law presumes that the directors know every entry made by the subordinate officers; but in an action against the director, personally, no such presumption exists. Bank v. Caperton, 87 Ky., 306.

However, if this bank statement of December 31, 1887, was published and circulated over the signature of the directors, with their knowledge, it would be *prima facie* evidence that they knew whether the same was true or false; but as to a director, he may by proof rebut this presumption of knowledge as to the truth of the statement, which, as said above, the president would not be permitted to do.

In our opinion, neither instruction one nor two given, embrace the law of this case, as both instructions leave the question of knowledge or belief by appellee of the truth of the statement to the jury (which it should not have done).

The court should say to the jury that the burden is on appellant to show that her agent, Tyler, did not know the statement of December 31, 1887, if circulated and published over his signature, with his knowledge and permission, was in fact untrue; if the jury shall believe the statement to be untrue.

For the errors indicated, the judgment is reversed and cause remanded, with directions to grant appellant a new trial, and for proceedings consistent herewith.