## Graham v. John R. Watts & Son.

(Decided March 20, 1931.)

C. E. RANKIN for appellant.

EWING, ROPKE & BALLANTINE, HENRY JACKSON and M. C. MINOR for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and plaintiff below, W. E. Graham, is a farmer residing in Mercer county, Ky., and the appellee and defendant below, John R. Watts & Son, is a corporation engaged in the business of cleaning, packing, and selling by wholesale farm seeds to be used by farmers in the growing of their crops, and its business is located in Louisville, Ky. Brown, Phillips & Noel is a partnership operating a retail merchandise business at Mayo, in Mercer county. On or about February 1, 1929, defendant sold to the merchants ten bags of seed in original packages, each of which contained one bushel of what was labeled on each sack as pure alfalfa seed and shortly thereafter they were shipped by defendant to the local merchants. Plaintiff bought one sack that was so labeled for the purpose of seeding a part of his farm in alfalfa. He prepared his ground and sowed the seed, but when they came up it was discovered that, instead of the sack he purchased containing alfalfa, it contained sweet clover seed, and he was confronted (in so far as he intended) with a contradiction of the Biblical saying that "Whatsoever a man soweth, that shall he also reap."

He then filed this action in the Mercer circuit court against defendant, and in his petition as amended he alleged the above facts, and in addition thereto he averred that the label on the sack of seed he purchased included, among other things, the name of the seed contained in the sack and which was put on the package by defendant pursuant to the requirements of sections 1376b-1 to and including section 1376b-13 of Carroll's Kentucky Statutes, 1930 Edition, which was an act of our General Assembly of March 13, 1916; that the similarity in resemblance between alfalfa and sweet clover seed was such as to require an expert to detect the difference, and that he was not a sufficient expert to do so; that he relied on the representation so made by defendant, and that he would not have purchased the sack of seed had it

not been for the representation contained on the label, and that defendant knew at the time it labeled and sold the seed to the retail merchants that the final consumer was to be the farmer who purchased them, and to which class plaintiff belonged, which was but saying, in substance, that the representation was addressed to the particular farmer who might buy the seed from a retail merchant.

The petition then alleged facts showing damage to plaintiff, which he fixed in his petition at $575, and for which amount he prayed judgment. Defendant first filed a special demurrer to the petition upon the ground that, inasmuch as the summons was served on it in Jefferson county, the Mercer circuit court had no jurisdiction of its person. Or, in other words, that plaintiff had selected the wrong venue for the action, there being no joined local defendant and against whom a joint cause of action was stated. The court overruled the special demurrer to which defendant excepted, and it then filed a general demurrer to the petition which the court sustained, followed by the filing of an amended petition, and the general demurrer was interposed to it and to the petition as amended, which the court again sustained, and upon plaintiff declining to plead further his petition was dismissed, and he has prosecuted this appeal.

Defendant has not prayed or obtained a cross-appeal from the ruling of the court on its special demurrer, and it might be doubted if that question is now before us, but we have concluded to put aside such doubt and to dispose of the question on its merits. Section 72 of the Civil Code of Practice, with the exception of actions described in certain sections of the same Code, which are not pertinent to the facts of this case, prescribes that:

"An action against a corporation which has an office or place of business in this state, or a chief officer or agent residing in this state, must be brought in the county in which such office or place of business is situated or in which such officer or agent resides: or, if it be upon a contract, in the above named county, or in the county in which the contract is made or to be performed; or, if it be for a tort, in the first-named county, or the county in which the tort is committed.

In the case of Peaslee-Gaulbert Co. v. McMath's Adm'r, 148 Ky. 265, 146 S. W. 770, 771, 39 L. R. A. (N. S.) 465, Ann. Cas. 1913E, 392, the exact question growing out of parallel facts was before this court, and we held that, inasmuch as the Code provision authorized a tort action against a corporation to be brought in the county "in which the tort is committed," Christian county, which was the place of the forum in that case, had jurisdiction of the defendant therein, who was a wholesale dealer in Louisville, Ky., and who sold to the retail merchant the goods that produced the injury for which compensation was sought therein, and the objection by the defendant in that case to the jurisdiction of the Christian circuit court, based upon the same grounds as herein urged, was denied by this court in a lengthy discussion, and the conclusion was reached that the tort, if one, was committed at the place where the plaintiff's injury was inflicted, and his damage, if any, was sustained. We will not repeat our argument made in that case, but refer the reader to that opinion for that information. The court in this case, therefore, did not err in overruling the special demurrer filed by defendant, and which brings us to a consideration of the court's ruling in sustaining the general demurrer filed to the petition.

It is a fundamental principle of correct reasoning that in the solution of a problem or decision of a question it is absolutely essential that the first thing to do is to ascertain what is the proposition or question to be solved or decided. Following that rule, it should be remembered that the precise legal propostiion before us in passing upon the court's ruling on the general demurrer is, that defendant is sought to be made liable in this case in tort for a false representation. Differently stated, it is sought to be made liable for an express misrepresentation which plaintiff, having the right to do so, and knowing nothing to the contrary, acted upon to his hurt and detriment. It is not a case bottomed upon fraud by concealment of facts; nor is it one bottomed upon either an express or implied warranty, nor one necessarily growing out of negligence (except in so far as a misrepresentation involves elements of negligence). Therefore, many of the numerous cases cited by counsel representing both sides that deal with situations and facts bringing those particular cases within some of the above

excluded classes referred to, and to which this one does not belong, are of but litle, if any, enlightening benefit as an aid in determining the precise question before us.

Involved in the solution of this case are two questions: (1) Whether under the general law defendant under the facts of this case, as above outlined, can be made liable to plaintiff for the damages sustained because of the former's express misrepresentation of the character of article that the latter purchased under circumstances authorizing him to believe and to rely upon the truth of the representation and which was, that the involved seed was that of a certain plant that plaintiff wanted to grow on his farm, when in fact it was the seed of an entirely different plant and which he did not wish sown on his farm, and (2) whether defendant is liable to plaintiff for the damage he sustained under the provisions of section 1376b-1 to and including section 1376b-13, supra, as aided by section 466 as contained in our present statutes, the latter of which says:

> "A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

Taking up first question (1), it may be stated with absolute verity that one guilty of fraud practiced upon another, whereby the latter is induced to act differently from what he otherwise would, to his injury and damage, is liable to the one so acting thereon for the damage sustained, unless he is relieved by some other principle of law, none of which is involved in this case. One of the most common species of fraud coming within the general principle stated is that of misrepresentations, or false representations directed to the defrauded person, with the intent and purpose on the part of the representant that his representations shall be acted upon by such person, and, if he does so under such circumstances as to create actionable fraud followed by damage as a result thereof, an action for deceit will lie. Cooley on Torts (3rd Ed.) volume 2, pages 904, 905, and 26 C. J. 1062, sec. 6, and same volume, 1098, sec. 29. The first reference states the general rule necessary to create liability for fraud, and the latter one states the universal rule to the

effect that, if a representation is false in fact and the maker of it is so circumstanced as that he should know the truth, other necessary elements being present, it becomes actionable in favor of one who had the right to rely on it and did so to his hurt. Multiplied authorities, with, perhaps, not a single exception, including a vast number of cases from this court supporting the general rules as just stated, could be inserted, but to save time and space we will desist from doing so, inasmuch as there is no contention to the contrary by counsel for defendant.

The question, then, is narrowed and reduced by the facts in this character of case to the single inquiry of: Who is the person to whom the false representations were intended to be and were actually made with the purpose that he should act thereon? It is admitted that in this character of case the ultimate consumer, who is the plaintiff, never had any direct dealing with the defend-- ant, who is the manufacturer.; and that the latter made no representations addressed *directly* or personally to him in any transaction in which they participated as negotiators the one with the other. But, notwithstanding the absence of such facts, the question still remains, whether or not representations by a manufacturer, of the character and nature here involved, are addressed to the ultimate consumer of the manufactured article with the intention and purpose of the one making them that such ultimate consumer shall accept them as true, and that if he does, and bona fide acts upon them to his detriment, then may he look to the guilty representant for the damage he sustained by the deceit?

Mr. Cooley in his work, supra, on page 940, states the general rule as above outlined in this language: "No one has a right to accept and rely upon the representations of others but those to influence whose action they were made." But on the next page the learned author proceeds to say: "But some representations are made for the express purpose of influencing the mind of the public, and of inducing individuals of the public to act upon them; and whoever, in fact, does receive, rely and act upon them in the manner intended, has a right to regard them as made to him, and to treat them as frauds upon him if in fact he was deceived to his damage. . . .

The cases are numerous in which the courts—sometimes of equity and sometimes of law—have given relief to parties defrauded by such misrepresentations." In notes 11 and 12 to the inserted text are numerous cases from many courts involving liability for like false reports circulated among the public as to the financial condition of banks or other corporations whereby a member of the public is induced to purchase stock therein when he would not have done so in the absence of such false representations.

The text in 26 C. J., supra, 1121, sec. 48, is to the same effect when it says: "Where misrepresentations are made to the public at large, or to a particular class of persons, with the intention of influencing any member of the public, or of the class, to whom they may be communicated, anyone injured through proper reliance thereon may secure redress." More than a column of cases rendered by the highest courts of many of the states and some federal courts are cited in support of that text, including the domestic cases of Exchange Bank of Kentucky v. Gaitskill, 37 S. W. 160, 18 Ky. Law Rep. 532, and Mr. Cooley under the text from his work cites the four domestic cases of Prewitt v. Trimble, 92 Ky. 176, 17 S. W. 356, 13 Ky. Law Rep. 581, 36 Am. St. Rep. 586; Trimble v. Reid, 97 Ky. 713, 31 S. W. 861, 17 Ky. Law Rep. 494; Trimble v. Ward, 97 Ky. 748, 31 S. W. 864, 17 Ky. Law Rep. 508, and Ward v. Trimble, 103 Ky. 153, 44 S. W. 450, 19 Ky. Law Rep. 1801, which involved the purchase of bank stock by a member of the public under circumstances hereinbefore outlined.

Cases have also been rendered making a common carrier liable in damage for falsely misrepresenting its advertised schedule time for the departure of its carrying vehicles, whereby a member of the public sustained damage; and likewise cases where a member of the public acting upon circulated information as to the solvency of individuals and upon which one who had the right to rely upon it acted to his detriment and damages. Somewhat analogous and persuasive cases may be found in the annotation to the case of Tomlinson v. Armour & Co., 19 L. R. A. (N. S.) 923, a New Jersey case, reported in 75 N. J. Law, 748, 70 A. 314. Also annotation in 17 A. L. R. to the case of Windram Manufacturing Co. v. Boston Blacking Co., 239 Mass. 123, 131 N. E. 454, a Massachusetts case, the annotations beginning on page

672 of the referred to volume, and the case beginning on page 669. Extended annotations on the same question of liability of a manufacturer to the ultimate consumer are found in 39 A. L. R. 992, and 63 A. L. R. 340. In them are contained discussions of contractual liability as for the breach of an implied warranty, and liability in tort based upon negligence of the manufacturer, neither of which is precisely germane to the case here involved which is, as we have seen, a false express representation. The annotations, however, especially in so far as they discuss the tortious liability of the manufacturer, are more or less pertinent as showing that the manufacturer owes a duty to the final consumer, which, if violated, gives the latter a cause of action against him, although the duty did not arise or emanate from a direct transaction.

We, therefore, conclude without further lengthening this branch of the case that defendant's false misrepresentation contained in the false label upon the package of seed purchased by plaintiff from the intervening merchants was a standing one addressed to plaintiff as the eventual ultimate consumer and which he had the right to act and rely upon, and if he did so under the circumstances giving him that right, and sustained damages thereby, defendant is liable therefor to the extent that the damages so sustained were the proximate result of such falsification.

But it is said that this court in a number of cases, among which are, the Peaslee-Gaulbert Co. case, supra; Heindirk v. Louisville Elevator Co., 122 Ky. 675, 92 S. W. 608, 29 Ky. Law Rep. 193, 5 L. R. A. (N. S.) 1103; Berger v. Standard Oil Co., 126 Ky. 155, 103 S. W. 245, 31 Ky. Law Rep. 613, 11 L. R. A. (N. S.) 238; Ward v. Pullman Co., 138 Ky. 554, 128 S. W. 606; Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979; Coca-Cola Bottling Works v. Shelton, 214 Ky. 118, 282 S. W. 778; Payton's Adm'r v. Childers' Electric Co.. 228 Ky. 44, 14 S. W. (2d) 208; Conn v. Lexington Utilities Co., 233 Ky. 230, 25 S. W. (2d) 370, and others referred to therein, while holding the manufacturer liable to the consumer for negligence when the article as put out was dangerous to human life and health, yet it was intimated therein that, unless its injurious tendency was of that nature, no liability would arise.

But we are considering a case that is broader than a mere negligence one.

In the Kentucky Independent Oil Co. case, supra, it was held that the manufacturer would be liable to the consumer for physical injuries sustained when the manufactured article was inherently dangerous if he negligently failed to indicate such dangerous quality by an appropriate warning notice, and which was to that extent different from other cases, in that they held the manufacturer liable for negligently compounding or constructing the manufactured article. But all of those cases happened to deal with facts involving personal injuries, and none of them intimated that there would be no liability if only property was injured though only through negligence. We repeat, however, that in this case there is involved more than simple negligence, and which additional something is, that defendant made a continuing false representation with the intention and purpose that all classes of persons to which plaintiff belonged should accept and act upon it, and plaintiff did so to his detriment.

Such a representation so made is one, as we have endeavored to point out, cognizable by the law and for the falsity of which it will furnish a remedy to the injured party under appropriate facts, although there be no direct personal transaction immediately between the parties. We, therefore, conclude that this case comes within the general rule and forms no exception to it, i. e., that only the person to whom the false representation is made may act upon it, and, if damaged thereby, he may maintain an action for deceit against the one who made it, and which conclusion we arrive at from the foregoing authorities announcing the principle that a representation may be made to the public at large, or to a class of the public, and may be acted upon by any member of the public in the one case, or any member of the class in the other.

Such conclusion is fortified by our opinions in the Peaslee-Gaulbert and Kentucky Independent Oil Company cases, supra, and others from this court, including that of Pulliam v. Gentry, 206 Ky. 763, 268 S. W. 557. In the first two of those three cases the fraud for which damages were sought to be recovered consisted in concealment by the manufacturer of dangerous qualities which it was his duty, as therein held, to disclose in some manner to the ultimate consumer, but which he did not

do, and in each case this court upheld the right of action in the consumer to recover resulting damages, notwithstanding there was no transaction directly between him and the manufacturer. If a cause of action in favor of the consumer will lie under such circumstances for fraudulent concealment, a fortiori, do we conclude that it will also lie for express misrepresentations, and we would so conclude without the persuasive support of the cited authorities.

The law is both a progressive and resourceful science, and is ever alert to accommodate itself to the constant changing circumstances and conditions of society. Its reservoir of remedial relief has by no means become exhausted, and when it is necessary to apply old principles to new facts, or to employ a remedy to fit altered situations and conditions, it is not only proper, but it is the duty of courts to do so to the end that justice may be administered. Until scarcely more than a generation ago the good housewife furnished her table with vegetables gathered directly from the garden. She preserved her fruit, and made all the butter for the family consumption, and the ash hopper functioned as an agency in supplying soap for domestic use. Also its product with the aid of the old-fashioned kettle converted corn into lye-hominy. (Yum! Yum!) Most, if not all other family supplies were made and prepared in the home. But all of that is now changed, and the task of preparing and furnishing such articles has been taken over by the manufacturer who is even assuming to remove from the kitchen the appetizing odor of baking beef, or roasting chicken, by himself supplying them in original packages ready to serve after proper heating. And so, it has come to pass that cooking is but little more than warming over what the manufacturer has prepared in his factory. Thus the changed conditions, and if under them the consumer should discover tar in a sealed package labeled "maple syrup" or should find reposing in a receptacle sawdust instead of represented "oatmeal," we are convinced that the law is able to redress such a wrong by furnishing an adequate remedy based upon the principles hereinbefore discussed, and which reason says should be applied to a mislabled package of seed, sold and purchased under the same conditions, as to any other article of human consumption.

The cases heretofore in this court growing out of the purchase of defective seed do not militate in the least

against such conclusion, nor do they determine any principle material to the concrete and narrow question involved. Some of such cases are Hobdy & Read v. Siddens, 198 Ky. 195, 248 S. W. 505; National Seed Co. v. Leavell, 202 Ky. 438, 259 S. W. 1035, and Duncan v. Dean, 205 Ky. 470, 266 S. W. 20. None of them involved the question of false or fraudulent misrepresentations and were mostly against the merchant who sold the seed to the farmer. Some of them alleged an express warranty by the manufacturer or wholesale dealer, and determinations in them are, upon the whole, of but little value the one way or the other in the solution of the narrow question we have been discussing. Question (1) therefore, must be answered in the affirmative.

Coming now to a consideration of question (2), supra, it may be said at the outset that whatever may be the effect of a violation of a penal statute, where there is no express conferring of a right of action to one injured as a consequence thereof, this court, since the enactment of section 466, supra, has, under various circumstances, sustained causes of action based upon violations of penal statutes, when it was alleged and proven that plaintiff proximately sustained injuries by reason thereof. Some of the many cases in which that was done are found in the notes to the section, compiled by the annotator of our present statutes. Limitations to the applicability of the section (466) are stated in the very recent case of Hackney v. Fordson Coal Company, 230 Ky. 362, 19 S. W. (2d) 989, 990. It was therein pointed out that the right of action given by the statute "exists only in favor of those for whose benefit the duty is imposed," and that the violation of the statute "is the foundation of an action in favor of such persons only as belong to the class intended by the Legislature to be protected by such statute."

Section 1376b-2 of our present statutes is a part of chapter 62 of the Session Acts of 1916, the title to which reads: "An Act to regulate the sale of agricultural and other seeds." One of the requirements of the section last referred to is, that each package of over one pound in weight of seed, put upon the market within the state, "shall be accompanied by a plainly written or printed statement in the English language;" and which shall contain a number of enumerated facts, the first of which is "the name of seeds." Clearly, its only purpose was for the benefit of the ultimate planter or sower of the seed

and to protect him from a misnomer of packages, adulterations, nongermanating qualities, etc., and we can scarcely imagine a penal statute imposing prescribed duties where the persons intended to be benefited by its enactment would have a greater right to rely upon its observation. As we construe brief of counsel for defendant, it is admitted by them that this action could be maintained by plaintiff because of a violation of the 1916 statute supra, and contained in our present statutes under the designated sections above referred to, if it were one coming within the inhibitions of that statute.

In other words, it is contended (a) that no provision of the statute has been violated by defendant, and (b) that section 10 of the act (now section 1376b-10 of the 1930 edition of Carroll's Kentucky Statutes) exonerates violators of the statute from civil actions by injured parties as a result thereof, if no tested sample of the seeds shall have been made as prescribed by the statute. It is, therefore, argued, in support of contention (a) that, inasmuch as neither the title to the 1916 act nor any of its sections specifically provided for a "misbranding" of seeds, as was done in the original 1904 act, it was not intended by the present one to penalize misbranding of seeds. It is therefore contended that, there being no penalty against misbranding of seed, defendant is not guilty of any violation of the statute, and, consequently, plaintiff has no cause of action against it under section 466, supra. But evidently counsel cannot be serious in advancing such arguments. If the statute was not directed at a "misbranding" of seed, then why, might we inquire, the express provision that the required statement on each package of seed should contain the name of its contents? We are not prepared to believe that the Legislature was guilty of such folly as to require that the kind of seed should be stated on the label without intending that such statement should be a correct and true one, and which, if not so, would be a misbranding. We cannot accept contention (a) as containing any merit whatever.

Contention (b) is equally faulty, since the precedent requirement as to tested samples is expressly confined by section 10 of the act to prosecutions for violations of the act, and has nothing to do with civil actions to recover damages by one for whose benefit the statute was enacted, growing out of and as a consequence of such

violations. The very terms of the statute admit of no other interpretation and for which reason we deem it unnecessary to enter into a discussion of authorized application of approved rules for the interpretation of statutes. The section of the statute relied on in support of this contention (10) confines its application to penalties under the statutes and prosecutions for their recovery. Section 466 confers a right of action on the injured party because of a violation of the pure seed statute whether a penalty is or is not imposed by the violated statute. Therefore, plaintiff may maintain his action against defendant, although it could not be prosecuted until a sampling of the seed was made, as prescribed by the terms of the statute. We, therefore, conclude that question (2) should also be answered in the affirmative.

Wherefore, the judgment is reversed, with directions to set it aside, and to overrule the demurrer filed to the petition as amended, and for proceedings consistent with this opinion.