## Blanton v. Back, and three other cases.

(Decided Oct. 22, 1937.)

A. H. PATTON and OSCAR L. BLANTON for appellants.

BACH & NOBLE, HENRY L. SPENCER and CLIFFORD E. SMITH for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

These cases were heard together in the trial court, have been heard together in this one, and will be disposed of in one opinion. After the primary election held on August 7, 1937, the official tabulation showed the following votes had been received by candidates seeking the Democratic nomination for:

| County Attorney | Sheriff | Jailer |
|---|---|---|
| Roscoe C. Back 2239 | Walter Deaton 2046 | Wm. M. Combs 2154 |
| Oscar L. Blanton 1120 | Madison T. Back 1702 | Hargis Sallee 1635 |
| | Jerry Noble 700 | |

There were other candidates for each of these offices, who received a fewer number of votes, but as they are not parties to these contests we have omitted them. The certificates were awarded to those who had received the largest number of votes in each race, and following contests were filed.

Oscar L. Blanton in contesting the nomniation of Roscoe C. Back charges he violated the provisions of our Corrupt Practice Act (Ky. Stats. sec. 1565b-1 et seq.) and that he was ineligible to become a candidate for this nomination.

Madison T. Back contests the nomination of Walter

Deaton and charges him with violation of our Corrupt Practice Act.

Jerry Noble has charged both Walter Deaton and Madison T. Back with violation of the Corrupt Practice Act and contends he should therefore receive the nomination.

Hargis Sallee contests the nomination of Wm. M. Combs and charges our Corrupt Practice Act was violated by Combs.

Thus we have four contests and four appeals, but only three nominations involved.

### Back's Eligibility.

At the general registration on August 1, 1936, Roscoe C. Back registered as a Republican. On April 16, 1937, Back made application to the clerk of the county court to have that changed and to be registered as a Democrat, which was done. On June 5, 1937, he filed his notification and declaration that he was seeking the Democratic nomination for county attorney. The clerk of the county court announced his name would not be put upon the Democratic ballot, whereupon Back filed suit under section 1550-27, Ky. Stats., against the clerk and Oscar L. Blanton and Alfred M. Russell, his opponents, for that nomination to have his name printed upon the Democratic ballot. They resisted him under sections 1486bb-4 and 1486b-47, Ky. Stats.

That action proceeded to judgment by which the clerk was required to print Back's name upon the Democratic official primary ballot. No appeal has been or could be prosecuted from that judgment (see section 1550-27, also case of Bingham v. Smith, 210 Ky. 256, 275 S. W. 811), hence the attempt made in this contest to raise the question of his ineligibility is a collateral attack upon that judgment and is unavailing. In that case the court had jurisdiction of the parties and the subject matter, and its action whether right or wrong (concerning which we express no opinion) is final and effective.

### Violation of Corrupt Practice Act.

Votes were openly and brazenly bought and sold, right and left, at this election, but we have no evidence connecting the contestees therewith, nothing to show they did any of it, or knowingly consented to its being done for them by others. The evidence is like a great

cloud of smoke, which indicates there is a fire somewhere but it is impossible to discover the fire. This evidence affords nothing tangible connected with the contestees upon which we can place our hands.

There were two slates formed, one known as "The Turner Slate" and the other as "The Miller Slate," these names being taken from those of the two rival candidates for the office of state Senator, which office was at the head of the ballot. We do not mean to say these two men were any more active in the organization of these slates than the others for we have no tangible evidence connecting any one with the organization of these slates. All we know about these slates is that they existed and strikers or vote buyers were actively buying for both of them. The witness, Mima Watkins, was a candidate for the office of county clerk; she was very active in the bribing of voters for the Turner slate, of which she says she was supposed to be a member, and of which the contestee Wm. M. Combs was a member, though he denies it. It is shown by a number of voters whose votes she bought that they desired to vote for Hargis Sallee and she told them she was with Wm. M. Combs and they would have to vote the ticket. Others that she bribed testify that when they said they wanted to vote for Hargis Sallee she said: "No, I won't have it that way, this is Willie Combs' money that I am putting up."

To another who made a similar request: "Mima said she couldn't do that, she had W. M. Combs' money."

Mima Watkins when testifying said the money she was using was her own money, and that she had borrowed it from Solly Combs. There is no proof of any connection between Solly Combs and Wm. M. Combs. The above statements could only be used to affect her credibility. They would be only hearsay as against Wm. M. Combs.

Wm. M. Combs in his testimony denies all knowledge of a slate, the existence of a pool, any contribution to a pool, or that he had furnished any money to Mima Watkins or to any one to buy votes. We cannot discuss all the evidence, but we regard the above as the best the contestants had.

### The Affidavits.

There were a number of witnesses whose testimony

the contestants desired, for whom they had subpœnas issued. Some of these witnesses ran away, others disregarded the subpœnas. Warrants of arrest were issued with like result. Application was made to this court for a writ to require the judge to certify this case for the appointment of a special judge. That writ was not issued, but the judge was directed to extend the time for the contestants to take proof four days and to come to Jackson and use all means available to enforce attendance of material witnesses wanted by contestants. The judge came the next day but things went on as before. A warrant of arrest issued by the judge himself and placed in the hands of the sheriff for execution was returned in this fashion:

"Executed by reading the within warrant of arrest to Mima Watkins through door. She refused to open door. September 11, 1937.

"R. A. Collier, S. B. C.
"By J. F. Little, D .S."

Instead of reading section 40 and section 41 of the Criminal Code of Practice to the officer, rebuking him severely and sending him right back, this occurred:

"By the Court: I direct you as the law provides, Mr. Little, to get enough help and go bring these witnesses in, use discretion, but bring them in. A. I wanted to use my best judgment in getting them in here.

"By the Court: I think you are to be commended, your conduct has been very commendable. I don't know what the results may be, but I can't refrain from my duty."

Things so continued until time for the taking of proof by contestants was on the point of expiring when they made affidavits setting out in detail the efforts they had made to get the witnesses they desired and what they expected to prove by them, and filed these affidavits and proposed to read them as the evidence of the absent or absconding witnesses. Exceptions were filed which the trial court sustained, and that is the principal question on this appeal for, without the testimony of these witnesses as it is set forth in these affidavits, the contestants have failed to sustain their contest, and with that evidence they have.

This is a new and ingenious procedure, and was

considered of such importance that it was heard by the entire court. This is a novel situation and we are neither cited to, nor have we been able to find, any precedent or warrant for the admission of such affidavits as the testimony of the absent witnesses, hence we must hold the trial court did not err in refusing to hear them. This is not like a motion for a continuance, where your adversary must allow you to read the testimony of your absent witness as set out in your affidavit or else allow you to have a continuance. This case cannot be continued. In less than two weeks election day will be at hand and what the contestants ask is this:

> "We have tried to get these witnesses. If we had them we could prove by them, so and so, election day is coming, therefore we want to read these affidavits whether the contestees agree to it or not."

In Graham v. John R. Watts & Son, 238 Ky. 96, 36 S. W. (2d) 859, 863, we wrote:

> "The law is both a progressive and resourceful science, and is ever alert to accommodate itself to the constant changing circumstances and conditions of society. Its reservoir of remedial relief has by no means become exhausted, and when it is necessary to apply old principles to new facts, or to employ a remedy to fit altered situations and conditions, it is not only proper, but it is the duty of courts to do so to the end that justice may be administered."

However, this is a statutory proceeding and we find no warrant in the statute (Ky. Stats. sec. 1565b-1 et seq.) for the procedure suggested.

Judgment affirmed, the whole court sitting.