CASE 61—ACTION BY FRED KIMBROUGH BY HIS GUARDIAN AGAINST
THE L. & N. R. CO. FOR DAMAGES FOR PERSONAL INJURIES.—MAY 7,

# Louisville & N. R. R. Co. v. Kimbrough.

### APPEAL FROM LOGAN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

INFANTS—WAIFS—DOMICILE—GUARDIAN—APPOINTMENT—JURISDICTION
—RAILROADS—TRESPASSERS—INJURIES—PETITION — ISSUES — OB-
JECTION—WAIVER—INSTRUCTIONS.

1. A waif thirteen years of age was injured while stealing a ride
   on a train. He had been abandoned by his mother when he
   was about six months old, his father was unknown, and the
   place of his mother's residence, if she were living, was not
   shown, and he was taken charge of by the authorities of the
   county in which he was injured. HELD, that the court of such
   county had jurisdiction to appoint a guardian for him, under
   Kentucky Statutes, 1899, section 2015, providing that the court
   of the county in which a minor resides at the time of the ap-
   pointment shall have jurisdiction to appoint his guardian.
2. Where a petition, in an action for injuries to an infant by being
   thrown from a railroad train, alleged that either the servants
   of the Pullman Company or the servants of the railroad com-
   pany pushed or kicked plaintiff from the train, an objection
   that the charge, being in the alternative, did not state a cause
   of action against either company, was waived by the railroad
   company's failure to raise such objection before answer, as
   required by Civil Code Practice, sections 85, 86.
3. Where, in an action for injuries to a waif by being kicked or
   pushed from a moving coach, he testified that he was kicked
   off by an unidentified "big fat man" in uniform, but there was
   no proof that the news agent of the train had any connection
   with its operation or was even an employe of the railroad com-
   pany, an instruction that plaintiff could not recover for being
   pushed off by such news agent, unless the jury found from the
   evidence that he was one of defendant's employes in charge of
   and operating the train, was misleading and ground for reversal.

WILBUR F. BROWDER, ATTORNEY FOR APPELLANT. (EDWARD W.
HINES AND J. C. BROWDER, OF COUNSEL.)

   1. The Logan County Court has no jurisdiction to appoint a
statutory guardian of a non-resident infant unless the infant
owns real or personal estate situate in the county.

Louisville & N. R. Co. v. Kimbrough.

2. The right of action in favor of a non-resident infant and against a railroad company for personal injuries sustained in Logan county, is not "personal estate" within the meaning of section 2015 of the Kentucky Statutes, relating to the appointment of guardian.

3. The action of an infant by a person alleged to be his guardian is not maintainable by such person as the "next friend" of the infant, after discovery, during the trial, that his appointment as guardian was absolutely void, unless section 37 of the Civil Code shall be complied with.

4. The news agent on a railroad train is presumed by law not to be an employe of the company in charge of and operating the train.

5. An infant can not, of his own volition, change his domicile.

6. To a trespasser stealing a ride on a train the railroad company owes no other duty than to use ordinary care, after discovering his peril, to prevent injury to him.

7. The verdict for $1,550 in this case is not sustained by any competent evidence.

EDWARD W. HINES, ATTORNEY FOR APPELLANT.

POINTS AND CITATIONS.

1. The petition was defective in failing to allege that plaintiff was ejected by either of the defendants, or by any servant having control of that part of the train from which he was ejected.

2. The petition was also defective in failing to allege definitely whether it was a servant of the railroad company or of the palace car company that ejected plaintiff. L. & N. R. Co. v. Fort Wayne Electric Co., 21 Rep., 1544; Browns' Admr. v. Ill. Cent. R. Co., 18 Rep., 974.

3. The verdict was flagrantly against the evidence in that it affirmatively appeared from plaintiff's testimony that none of the servants of either defendant who might be presumed to have authority to eject intruders was the person who ejected plaintiff. Smith v. L. & N. R. Co., 95 Ky., 11; Galveston, &c., R. Co. v. Zantzinger (Texas), 47 L. R. A., 282.

4. The railroad company owed plaintiff no duty to protect him from assaults by others, and therefore even if the company could have known in time to prevent it that plaintiff was about to be ejected from the train (which does not appear) it is not liable for its failure to take measures to prevent him from being ejected. Dalton's Admr. v. L. & N. R. Co., 22 Rep., 97; L. & N. R. Co. v. Thornton, 22 Rep., 778.

5. Even if plaintiff was in peril of falling from the train the failure to stop the train to prevent him from falling did not cause the injury, as plaintiff alleges and proves that he did not fall.

6. It was error to instruct the jury to find for plaintiff if they believed he was ejected by any servant *assisting in the operation of the train*, as it is not every servant who renders some assistance in the operation of a train who may be presumed to have authority to eject intruders.

7. It was also error to instruct the jury to find for plaintiff if they believed defendant's servants engaged in operating the train discovered his peril in time to prevent the injury, as plaintiff alleged and proved that he was pushed from the train, and therefore the failure to stop the train to prevent him from falling could not have caused the injury.

8. The court erred in not giving the instruction asked by defendant to the effect that defendant was not liable if plaintiff was ejected by the newsboy; and also in so modifying that instruction as to tell the jury plaintiff could recover if the newsboy ejected him, provided the newsboy was under defendant's "control."

9. The court erred in refusing to permit the filing of the amended answer offered by defendant setting up the fact that the appointment of the person named in plaintiff's petition as his guardian and by whom he sued was void.

As plaintiff was an infant whose father was unknown, his domicile was that which his mother had at the time of her death, and he could not change that domicile by an act of his own. Therefore his intention to make his home in Logan County, Kentucky, did not make that his legal residence, his mother having had her domicile in Tennessee at the time of her death. Munday, &c., v. Baldwin, 79 Ky., 121.

10. The plaintiff's right of action to recover damages for a tort did not constitute personal estate in Logan county so as to give the county court of that county jurisdiction to appoint a guardian for him. Kentucky Statutes, sec. 2015; Civil Code of Practice, sec. 35, subsec. 4; L. & N. R. Co. v. Brantly's Admr., 96 Ky., 297.

E. B. DRAKE, ATTORNEY FOR APPELLEE.

This is an action by a homeless boy, by his guardian, for damages for being pushed or kicked off of appellant's train on which he was stealing a ride.

The jury gave him a verdict for $1,550, which the appellant seeks to reverse.

Louisville & N. R. Co. v. Kimbrough.

We contend:

1. That the boy having no home and no parents living, and having been taken in charge by the county authorities of Logan county and sent to the county poor house, his place of domicile was in Logan county, and the Logan County Court had jurisdiction to appoint his guardian.

2. That although a trespasser on appellant's train, the servants of appellant in charge of the train, had no right to push or kick him from the train whilst it was running at the rate of thirty-five or forty miles an hour, and for the injuries he thereby sustained the appellant. is liable.

3. That the evidence was sufficient to authorize the jury, who are the sole judges thereof, to find for the plaintiff.

4. The evidence showing that the boy was not only painfully hurt and mangled, but was permanently injured, having his shoulder broken and right arm palsied, a verdict of $1,550 is not excessive and should have been for the full sum of $1,900 sued for.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee, aged about 13 years, while stealing a ride on one of appellant's passenger trains, in Logan county, fell or was pushed from the steps of the rapidly moving car on which he was riding, and was severely injured. He had been a resident of Clarksville, Tenn., but had abandoned his home there (if it can be said that he had a home there), with the intention of making his home in this State. He was a waif, abandoned by his mother when he was about six months old, and his father is unknown. Whether his mother was living, or, if living, where, was not shown. In his suit to recover damages from the railroad company, brought by his statutory guardian appointed by the Logan county (Ky.) court after his injury, the first question presented was upon the jurisdiction of the Logan county court to appoint the guardian—for the right of the guardian as such to maintain this action is denied.

Domicile is correctly defined as being either one of origin, of choice, or by operation of law. Every person must

be assigned to one of these. So that the place of the resi-
idence of the father of a legitimate child, or, if illegitimate,
of its mother, at its birth, is its domicile of origin. As an
infant is incapable of changing its domicile by choice (Mun-
day v. Baldwin, 1 R., 420, 79 Ky., 121), it follows that where-
ever may be the domicile of its father, if it is legitimate,
or otherwise of its mother, controls. But where the child
has neither legal father nor living mother, and where nei-
ther is shown to have maintained a domicile at any place,
then it must follow that the child's domicile must be fixed
by operation of law. If the mother's domicile was shown,
the child's would be accordingly settled. But here is a
waif, knowing nothing of its parents, and of whom nothing
can be shown, stranded in a community within this Com-
monwealth. It probably has a certain right to property.
Society is interested, alike from motives of humanity and
of policy, in preserving to such one that which, if his, will
likely save him from being a charge upon the public. The
authorities of this State under its laws have taken charge
of the person of this derelict, and committed him to the
almshouse. They have fixed him a domicile, for the very
good reason, in this case, that he appeared to have none
other, and it was necessary that he have one. Therefore
the law will make him one. The fiction of the law that
his mother's domicile, if living, or, if dead, her last domicile,
was his, should yield to the more practical fact that, being
found a wanderer and an outcast, the law will take charge
of him for his good and for that of the State; it will fix his
status in the social state as affects his rights, the right
of control of his person, and the charge of his property. The
State has "adopted" him, as it were; has fixed his resi-
dence, his place of abode. It is meet that it should, having
thus taken charge of his person, whether with or without

his consent, also provide officials to take charge of and represent his property interests. Our statute (section 2015, Ky. St. 1899) provides: "The court of the county in which the minor resides at the time of the appointment shall have jurisdiction" to appoint his guardian. We are of the opinion that the county court of Logan county, *prima facie*, had jurisdiction to appoint the guardian suing in this case.

The boy was riding on the rear steps of the Pullman car attached to appellant's north-bound passenger train. The petition alleged that either the servants of the Pullman Company "or" the servants of appellant pushed and kicked appellee from the moving train. It is now urged by appellant that the petition was defective in that it failed to state a cause of action against either of the defendants; that our Code provision (Civ. Code Prac., section 113, subsec. 4) allowing charges in the alternative did not extend to charging alternative defendants with a single wrongful act. L. & N. R. R. Co. v. Ft. Wayne Electric Co. (108 Ky., 113, 21 R., 1544), 55 S. W., 918. Without motion to compel appellee to elect which of the defendants he would prosecute, and without demurrer, appellant tendered an issue in the case. This objection is raised here for the first time. We hold that the defect, if it was a defect, was waived by failure to object before answering. Sections 85, 86, Civ. Code Prac.

The jury found for appellee $1,550 in damages.

Appellant relies upon these grounds for reversal, in addition to those already discussed, viz.: That the verdict is against the evidence, and error in instructions to the jury.

Appellee was the only witness who testified as to the manner of his having been injured. In his testimony he stated that between Guthrie and Russellville, about 9

o'clock at night, as he was sitting on the steps of the rear platform of the rear car of the train (which was the Pullman car), a person dressed in a uniform, having a blue coat and brass buttons, and a cap with writing on it, came out of the door, saw him, and asked him what he was doing there. This person did not offer to molest appellee, but returned into the car and closed the door, Through fear, appellee crept further down on to the bottom step, or the one next to it, and was crouching there, with his legs hanging down so that his feet struck the ties, when the person above described returned with another person, also wearing a uniform, including cap. The latter was described as being "a big fat man," who, appellee claims, placed his foot against him, without a word, and shoved or kicked him off the car. The train was traveling at 35 or 40 miles an hour. Every person connected with the operation of that train, except the fireman and baggageman, were introduced by appellant as witnesses. All of them, except one, testified that they had never seen appellee, and knew nothing of his presence on the train, or of his injury, till afterwards. Appellee, on being re-examined after these witnesses, testified that none of them was the person who shoved or kicked him off the train.

Sharpe, flagman on the train, testified that he went upon the rear platform to readjust a marker, a red light carried there, when he discovered appellee; that he was then hanging on to the hand bar and lower step of the car; that the side door of the vestibule was closed; that he asked appellee if he could climb up onto the steps, and appellee told him he could not; that he pulled the signal cord to the locomotive, giving the emergency signal to stop, and went forward to inform the conductor of the situation; that the boy was so placed that the witness could not with safety to

his own life, at the speed the train was going, have taken
hold of him and lifted him onto the car; that when he re-
turned directly the boy was gone; and that the train ran
about one mile and a quarter before stopping after the boy
was first discovered by him.

The negligence complained of and sued for was not in
failing to stop the train and rescue appellee from the peril
of falling from an insecure, dangerous position, nor for fail-
ure to aid him in regaining his foothold on the steps, for
he says (and he is the only witness who testified on that
point) that but for the push or kick of the fat man in uni-
form he would not have fallen. This was the sole ground
of negligence relied upon in the petition. Therefore his
whole case, as the pleadings now stand, depends on connect-
ing this fat man with appellant as one in authority on that
train, assisting in its operation as one of appellant's ser-
vants. Whether baggagemen on trains and firemen wear
uniforms such as described by appellee is not shown by the
record. Whether it is a fact of such common knowledge
that the courts should take notice of it is not at all cer-
tain. Such uniforms are not confined in their use by any
means to trainmen. The only other person on that train
who is shown to have then worn a uniform was the news-
boy. He was not introduced as a witness. There was no
evidence tending to show that the newsboy had any connec-
tion whatever, as a servant with appellant, and of course,
therefore, none that he had any authority whatever in the
operation or management of the train. In the way the
issue was formed it is doubtful if the verdict was sustained
by the evidence.

The instructions are not subject to proper criticism, ex-
cept the one given, marked "O," as follows: "The court
instructs the jury that if the news agent who was on de-

fendant's train on the occasion in controversy was neither in the service nor under the control of the defendant, and even if the jury shall believe from the evidence that plaintiff was pushed or ejected from the train by said news agent, they must find for the defendant, unless they shall believe from the evidence that said news agent was one of defendant's employes in charge of and operating said train." As there was not a scintilla of proof that the news agent had any connection whatever with the operation of the train, or even that he was an employe of appellant, the instruction was misleading, and it was error to submit that question to the jury upon the state of the record.

For the reasons indicated, the judgment is reversed, and cause remanded with directions to award appellant a new trial under proceedings not inconsistent herewith.

Petition for rehearing by appellee overruled.