## GAIDRY MOTORS, Inc. v. BRANNON.

Court of Appeals of Kentucky.

Oct. 30, 1953.

As Modified on Denial of Rehearing
May 28, 1954.

Stoll, Keenon & Park, Lexington, for appellant.

Alfred W. Minish, Carrollton, Lawrence C. Jenkins, Lexington, for appellee.

WADDILL, Commissioner.

Gaidry Motors, Incorporated, appeals from a judgment for $11,489.95 recovered against it on the second trial of this case by Albert Brannon for injuries he received when he was struck by an automobile driven by William Hensley. Hensley had

purchased a used car from appellant and had driven it only a few blocks when the accident occurred. The jury, under the instructions, found the cause of the accident to have been the defective condition of the brakes on the car operated by Hensley. This suit was brought against Gaidry Motors on the theory that it sold William Hensley a defective secondhand car without notifying Hensley of the defect.

There was a previous trial of the case on which occasion the plaintiff was unable to prove that defendant, Gaidry Motors, had knowledge of the defective condition of the brakes, and the outcome of this trial was a directed verdict and judgment for Gaidry Motors. After the first trial of the case, appellee moved for a new trial alleging error and also that he had discovered new evidence. The new evidence was the testimony of a witness, Thomas Reaves, who had sold the car to Gaidry Motors, that he had informed it of the defect in the brakes. The new trial was granted and appellee won a verdict.

Appellant urges as a ground for reversal that appellee failed to show proper diligence in searching for the witness, and was unable to present a good excuse for such failure.

The record reveals that Reaves' name appeared on the automobile bill of sale, along with his address. So far as is shown, the only effort made by appellee to locate Reaves was to inquire at that address. No one present knew of Reaves' whereabouts. It further appears that Reaves was subpoenaed by Gaidry Motors as a witness on its behalf, and the appellant claims that Reaves was present in the courtroom at the first trial of the case and that his name was called by the sheriff, though he was not called as a witness, because the court gave a peremptory instruction prior to the time he would have been used.

■ On motion for a new trial, the lower court is not confined to the errors specified in the motion and grounds therefor; nor is the Court of Appeals confined, in reviewing a lower court's ruling, to the reason given by it for granting or refusing a new trial but is authorized to approve the granting of a new trial, if, for any reason appearing in the record, a new trial should have been granted. Louisville & Interurban R. Co. v. Pulliam's Adm'x, 259 Ky. 82, 82 S.W.2d 191.

Thus, though appellee may not have been entitled to a new trial because of his discovery of a new witness after the trial due to a lack of diligence, we may find that he was entitled to a new trial if the court erred in directing a verdict for Gaidry Motors.

In his motion and grounds for a new trial, Brannon asserted as his second ground that the decision of the court in peremptorily instructing the jury to find for appellant was contrary to law.

On the first trial the court gave a peremptory instruction in favor of Gaidry Motors apparently because there had been no showing that Gaidry had actual knowledge of the defective condition of the brakes.

A majority of jurisdictions which have ruled on the subject have held that a dealer who undertakes to recondition used cars before resale owes to the public a duty to use reasonable care to discover defects, and either to repair or to warn the buyer of the existence of the defect. McLeod v. Holt Motor Co., 208 Minn. 473, 294 N.W. 479; Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 122 A.L.R. 987. It appears that most states have been reluctant to extend liability to the case of the dealer who makes no representations as to the condition of the automobiles he sells.

■ Although not per se a dangerous instrumentality, an automobile may become so when used in a condition likely to cause injury. Vaughn v. Millington Motor Co., 160 Tenn. 197, 22 S.W.2d 226. And see Owensboro Undertaking & Livery Ass'n v. Henderson, 273 Ky. 112, 115 S.W.2d 563.

■ It is common knowledge that old cars are more likely to be subject to me-

chanical defects than are new ones. The turnover in ownership of used cars is fairly rapid, and the majority of these cars are sold through used car dealers. The used car dealer is in a better position, by reason of his opportunity, than his average customer, to discover what defects might exist in any particular car to make it a menace to the public. We are of the opinion it is not too harsh a rule to require these dealers to use reasonable care in inspecting used cars before resale to discover these defects, which the customer often cannot discover until too late.

■ Tort liability is not based upon representations or warranties. It is based on a duty imposed by the law upon one who may foresee that his actions or failure to act may result in an injury to others. Meeks Motor Freight v. Ham's Adm'r, 302 Ky. 71, 193 S.W.2d 745. See MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696.

We are not alone in adopting this rule. In Standard Oil Co. v. Leaverton, 239 Mo. App. 284, 192 S.W.2d 681, the Missouri Court said that the fact that the persons concerned all knew that the car was a used car and that it was not offered as one which was reconditioned, would not relieve the dealer of his duty to his customers and third parties. The court in that case made it clear that although there had been no sale, since the accident occurred while a prospective purchaser was trying out the used automobile, the liability was not based on any warranty or contract of bailment, but upon the obligation imposed by the law upon every man to refrain from acts of omission or commission which he may reasonably expect would result in injury to third persons. We adopt this view as the better rule. See Note: 12 Mo.L.Rev. 57; Thrash v. U-Drive-It Co. and Spot Motor Co., 93 Ohio App. 388, 113 N.E.2d 650.

■ In view of the rule we are adopting, we conclude the new trial was properly granted.

Appellant also urges as grounds for reversal that there was not sufficient evidence that the negligence of Gaidry Motors was the proximate cause of the accident to justify a submission of the case to the jury.

■ Hensley, the driver of the used car, testified that he had driven the car only 14 city blocks from the appellant's used car lot when at a speed of about 25 miles per hour he applied his brakes on entering an intersection and that the brakes immediately grabbed or locked, causing the car to skid onto the sidewalk, where it pinned Albert Brannon against a wall crushing his left leg so that it had to be amputated. Other witnesses to the accident supported Hensley's testimony. Two experienced automobile mechanics who examined the car after the accident testified that there was grease on the brake drum of the right rear wheel, that grease was leaking from the grease cell and that it could be seen on the outside of the wheel. Both were of the opinion that the condition had existed for a month or longer. They testified that grease on a brake drum will cause the brakes to grab and sometimes cause a car to skid. Bystanders testified that the car skidded, and that the rear end went sideways onto the sidewalk. From this synopsis it may be seen that there was ample evidence to submit the case to the jury on the question of proximate cause.

■ Appellant also urges for reversal that appellee's petition pleads a cause of action alternatively as to parties and as a result, states no cause of action. This Court has held that a party waives objection to such defects unless he demurs to the petition or makes a motion to elect before he files his answer. Appellant waived his objection by failing to follow either course. Louisville Gas & Electric Co. v. Nall, 178 Ky. 33, 198 S.W. 745; Louisville & N. R. Co. v. Kimbrough, 115 Ky. 512, 74 S.W. 229.

Judgment affirmed.

SIMS, C. J., and COMBS and DUNCAN, JJ., dissenting.

COMBS, Justice.

I have no particular quarrel about the result reached in this case. I think the case might have been affirmed without doing much violence to the law or to the facts on either of two grounds to wit: a new trial was properly granted by reason of newly discovered evidence as the trial judge held, or the dealer subjected itself to liability by representing to the purchaser that the brakes were in good condition when in fact they were defective. This last theory would constitute an extension of the prevailing rule in this state, but I would have no objection to extending the rule to that extent. But I do not think it is advisable to open up an entirely new field of tort liability, as does the majority opinion, if I read it correctly, without even an attempt to mark the boundary of the new field. I subscribe to the theory that there should be an orderly growth of the law in order to meet changing conditions. But I would emphasize the word "orderly." One of the important functions of a court is to strive for stability and certainty in the law. There is enough uncertainty at best. Very often it is as important that a rule of law be settled as that it be settled in a particular way. To that end a court, in my opinion, should not discard an established rule unless it has another and better rule to take its place; and when a new rule is embraced it should be defined with reasonable certainty.

I am disturbed not only by what is said in the majority opinion, but perhaps more so by what is left unsaid. By this statement I do not mean to suggest any criticism of the author of the opinion. He wrote, and wrote well, what the court requested him to write. But I think the court assigned him an impossible task.

If I understand the opinion, it holds without equivocation that a used car dealer has a duty to inspect a used car before he sells it; and that when a dealer sells a car in a defective condition and a third person is injured as the result of such defects, the dealer who sold the car is responsible in damages to the third person. At first blush this might not seem to be an unduly harsh rule. But let's consider the implications. Several questions immediately come to mind:

(1) Does the duty to inspect arise from the fact that a used car is a dangerous instrumentality, or does the court mean to create a new class of tort-feasors, i. e., used car dealers, without regard to the type of article which they handle?

This court has never held that an automobile is a dangerous instrumentality. If the opinion is based on the premise that it is, I think the court should say so in plain words. And if a used car is a dangerous instrumentality, does a new car fall within the same classification? If not, when does a new car become a used car?

(2) Does the duty to inspect apply only to used car dealers or does it also apply to everyone who sells a used car?

I do not get any help from the opinion on this question.

(3) Is the duty to inspect confined to used car dealers, or does the rule also apply to dealers in other second-hand articles such as farm tractors, road machinery, cook stoves, etc.?

(4) Can the dealer relieve himself of liability to third persons by telling the purchaser that the car is in a defective condition, or that it has not been inspected for defects?

The opinion is silent on this point but I think the necessary implication of the decision is that regardless of what transpires between the dealer and the purchaser there is an absolute duty on the dealer to inspect the car for defects and to correct such defects as might prove to be dangerous to third persons.

(5) How much inspection must be made and how much repair work must the dealer do?

The only standard set out in the opinion is the somewhat nebulous one of "reason-

able care" which apparently would make a jury the final arbiter in all cases where the question is put in issue.

It seems to me that the opinion should furnish the answer, or at least a partial answer to the foregoing questions. Until they are answered there will be an element of uncertainty in a field of law in which heretofore there has been little controversy. Since the old rule is being discarded, the new rule should be defined so that those affected by the change can govern themselves accordingly.

I realize, of course, that the majority are attempting by their opinion to accomplish a worthwhile objective; namely, the removal from the highway of dangerously defective motor vehicles. With this objective I am in complete accord. But it seems to me the basic weakness in the opinion is that the court is attempting to do in a suit for damages what must be done, if at all, by the legislature under the police power of the state. Many states have compulsory automobile inspection laws enacted and enforced under the police power. That is the only feasible way to handle the problem. The attempt to solve the problem by judicial fiat will, in my opinion, result only in creating confusion in the law without alleviating the situation to any appreciable extent. When a court sets itself up as an instrument of social progress and embarks on a crusade, it should not merely shoot a scatter gun in the general direction of a supposed target. The shots should be zeroed in with some degree of accuracy and innocent bystanders should be given reasonable opportunity to remove themselves from the line of fire.

It is suggested by the appellant that the opinion amounts to judicial legislation. Perhaps it does, but that charge does not disturb me. The same charge could be leveled at almost any opinion which discards an old rule and adopts a new one. But what does disturb me is that the new rule adopted by the court is so vague and indefinite that if it had come before us as a legislative enactment we almost certainly would have declared it invalid on the ground of uncertainty.

There can be no doubt that the rule laid down in the majority opinion is an innovation in the law of this state. Moreover, it is against the great weight of authority. Heretofore the rule in this state has been that a vendor of chattels not inherently dangerous is not liable to third persons having no contractual relation with him for defects in the chattels unless the vendor knows of defects in the article which make it dangerous and either conceals those defects from the purchaser or represents that the article is in good condition. Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S. W. 1047, 37 L.R.A.,N.S., 560; Davis v. Glass Coffee Brewer Corp., 296 Ky. 706, 178 S.W.2d 407; Payton's Adm'r v. Childers' Electric Co., 228 Ky. 44, 14 S.W.2d 208; Nehi Bottling Co. v. Thomas, 236 Ky. 684, 33 S.W.2d 701; Graham v. John R. Watts & Son, 238 Ky. 96, 36 S.W.2d 859. In the Olds Motor Works case Judge Carroll stated the rule in these words [145 Ky. 616, 140 S.W. 1049]:

"* * * Where the article itself is not inherently or intrinsically dangerous to health or life, a third party, seeking to hold the maker liable for injuries suffered by him in the use of the article, must show that the maker knew it was unsafe and dangerous, and either concealed the defects, or represented that it was sound and safe. But even when this is shown, the maker will not be liable, if it is made to appear that the purchaser had knowledge of the defects at and before the third party was injured in using it."

(Citing numerous cases, foreign and domestic.) It seems to me this rule is as sound now as it was when it was written. Moreover, no reason is given in the majority opinion why the rule should be discarded.

The rule has also been settled in this state that there is no duty on the vendor of articles not inherently dangerous to make an inspection of those articles before sale. Peaslee-Gaulbert Co. v. McMath's Adm'r, 148 Ky. 265, 146 S.W. 770, 39 L.R.A.,N.S., 465; Rankin v. Harlan Retreading Co., 298 Ky. 461, 183 S.W.2d 40.

It seems to me the only way the majority opinion can possibly be justified without ignoring all the law this court has ever written on this general subject, is on the premise that an automobile is a dangerous instrumentality. It is said in the opinion, however, that an automobile is not per se a dangerous instrumentality but that it may become so when used in a condition likely to cause injury. This merely begs the question. Obviously, any article is a dangerous instrumentality when it is in a condition likely to cause injury.

The majority cite only one case which actually supports their opinion, that being the Missouri case of Standard Oil Co. v. Leaverton, 239 Mo.App. 284, 192 S.W.2d 681. While I have the greatest respect for the Missouri court, I am unwilling to stand with it on this question.

With due deference to those members of the court who have joined in the opinion and to the author of the opinion, I respectfully dissent, and I am authorized to say that Chief Justice SIMS and Justice DUNCAN join with me.