Robert A. TINNELL, Sr., Administrator of
the Estate of Paul Raymond Tinnell,
Deceased, Appellant,
and
Robert A. Tinnell, Sr., Administrator of the
Estate of Robert A. Tinnell, Jr.,
Deceased, Appellant,

v.

COMMERCIAL CARRIERS, INC., a Corporation, Ezra Newton and Hickman Woodring,
d/b/a Woodring Motor Company, Appellee.

Court of Appeals of Kentucky.

Nov. 6, 1964.

Walker & West, Henderson, for appellants.

King, Deep & Branaman, Henderson, for appellee.

MOREMEN, Judge.

Robert A. Tinnell, Sr., lost his two sons in an automobile accident and, as administrator of their estates, brought suit against appellee, Hickman Woodring, doing business as Woodring Motor Company, and others, in which he sought to recover damages. Thereafter, the Henderson Circuit Court entered a summary judgment in favor of Hickman Woodring. Although summary judgment was entered in behalf of other defendants, this appeal is taken only from the judgment in favor of appellee, Hickman Woodring, doing business as Woodring Motor Company.

On July 13, 1959, Robert A. Tinnell, Jr., purchased a 1957 model used car from appellee. The appellee reconditions used automobiles before resale. A written warranty was issued to Tinnell, Jr., which covenanted briefly that the automobile was in good running condition for normal use; it further agreed to give a fifty per cent discount on labor and a twenty-five per cent discount on parts for thirty days or for a thousand miles, whichever event occurred first. It was specifically stated that the warranty was in lieu of all others either express or implied.

On August 5, 1959, Tinnell, Jr., returned the automobile to appellee for adjustment of the brakes and, during the same month, he drove the automobile to Michigan and back to attend a summer military camp. There is also some evidence to the effect that he again took the automobile to appel-

lee for further repairs thereafter, but appellee's records do not reflect such action. Some time about the middle of November, Robert Tinnell, Sr., the father, drove the automobile in question and he testified that in an emergency he was forced to apply the brakes and that "the front end locked and I just stopped." He told his son he thought that appellee had not fixed the brakes properly. On November 20, 1959, Tinnell, Jr., took the automobile to the Schmidt Service Station which specializes in wheel balancing and front end aligning. One of the employees of the service center testified and, although his deposition is unsatisfactory, it apparently indicates that he examined the automobile in the presence of Tinnell, Jr. and told him that some of the parts were defective. However, they did not attempt to repair the automobile.

On the afternoon of the following day, Robert Tinnell, Jr., with his brother, Paul R. Tinnell and Mrs. Paul Tinnell, drove from Henderson toward Evansville, Indiana, where Tinnell, Jr., worked. It was the purpose of his brother and sister-in-law to use the car after leaving him at his place of work. This was about eight-thirty or nine o'clock in the evening. Mrs. Paul Tinnell was the sole survivor in the Tinnell automobile. She stated that on their way to Evansville they encountered another automobile in front of them traveling in their lane. When they would attempt to pass it, it would speed up, thus preventing them from passing. It would then slow down causing them to reduce speed. Evidently this racing or passing game continued for some time. When they reached the edge of the bridge they saw that the car had stopped on the bridge. She stated that the driver of their automobile hit the brakes and the car started sliding or turning. As to the operation of the brakes, she testified:

"Q. When Robert Tinnell applied the brakes on the 1957 Oldsmobile in which you were riding did they operate? A. They went on real fast and threw right on.

"Q. What do you mean by saying they threw right on? A. I mean he just put them on and they applied real hard.

"Q. Did they apply with any sudden jerk or jolt? A. No, they just slammed right on."

The car collided with a trailer truck loaded with new automobiles. The driver of the truck died also.

Appellant bases his right of recovery on the rule, first announced in Gaidry Motors, Inc. v. Brannon, Ky., 268 S.W.2d 627, to the effect that a dealer who undertakes to recondition used cars before resale owes to the public a duty to use reasonable care to discover defects and either to repair them or to warn the buyer of the existence of the defects. The rule is based on a duty imposed by the law upon one to foresee that his action or failure to act may result in injury to others. It should be noted in that case that the purchaser of the used automobile had driven it only a few blocks when the accident occurred. In Armour v. Haskins, Ky., 275 S.W.2d 580, the Court held that the decision in the Gaidry Motors case must be narrowly confined. The opinion lists the facts common to both cases in which a submission to the jury was permitted. These facts are as follows:

1. defective brakes;

2. brakes whose defectiveness would have been easily ascertained or recognized by a qualified automobile mechanic.

3. which defect caused an accident resulting in personal injury immediately after the sale;

4. a buyer who relied largely on the judgment of the seller;

5. before a buyer had full opportunity to become aware of the defect; and

6. before change in the vehicle could be either caused or expected from usage.

The facts of this case fail to qualify under the above rules on several counts. The accident happened about four months after the sale; the buyer, who was described in the evidence as being a good automobile mechanic himself, had full opportunity to become aware of the defect—and, in fact, did believe that something was wrong with the brakes. There was no showing that he relied on the judgment of the seller. As was pointed out in Beardsley v. Broach, Ky., 310 S.W.2d 539, and Armour v. Haskins, Ky., 275 S.W.2d 580, car dealers are not insurers for the continuing safety of automobiles which they have sold. In addition, we find nothing in the evidence which indicates that defective brakes were the proximate cause of this accident. It seems certain from the evidence that the driver, at the time, was engaged in racing another car on a very hazardous highway. We are of opinion that the trial court was correct in granting summary judgment.

Judgment affirmed.