Earl **SCUDAMORE**, d/b/a Superior Acid and Cementing Company, Appellant,

v.

Paul W. **HORTON** and Globe Insurance Company, Appellees.

Court of Appeals of Kentucky.

March 1, 1968.

and Cementing Company, appeals from a judgment for $20,000 rendered in favor of appellee Paul W. Horton after a verdict by an advisory jury in Horton's suit for personal injuries he claims to have sustained when appellant's truck failed to ascend a hill, rolled back down the same, and injured appellee.

Joined as a party defendant was Wallace G. Moody and his Somerset Machine Shop on the theory that Moody did certain unworkmanlike repairs on the truck involved that caused or contributed to failure of the truck to make the grade and run, uncontrolled, back down the hill. The work Moody did involved extending the length of the chassis 21 inches, which necessitated lengthening the drive shaft and brake lines sufficiently to correspond to the new length.

Globe Insurance Company is a party appellee herein by reason of its obligation as insurance carrier for Horton's employer. Globe has paid compensation benefits to Horton and was subrogated by the judgment to the right of Horton to the extent of compensation paid prior to the date of judgment.

The facts reveal that on August 27, 1964, Horton decided to acidize an oil well located near the top of a 30 to 35 degree incline. Horton engaged Scudamore to send his acid-carrying truck and do the job. Horton waited near the foot of the incline for the truck. Shortly, one Austin Franklin came along with the acid truck. Horton got in the truck, and they proceeded toward the incline to the well to be acidized. As they approached the incline, Horton says he started to Austin Franklin: "Austin, this is a pretty good hill, is this a good truck," and that Austin said, "yes, this is an excellent truck." After reaching a point near the crest of the incline, the truck "bogged down" and Franklin "pushed down on the gas to pick it up and all at once this terrific noise" was heard. Franklin then "put on the brakes and they went to the floor," meaning that the brakes

Davis M. Howerton, Jr., Henry A. Triplett, Hogan, Taylor, Denzer & Bennett, Louisville, for appellant.

Henry T. Merritt, Louisville, for appellee, Paul W. Horton.

William A. Miller, Louisville, for appellee, Globe Ins. Co.

EDWARD P. HILL, Judge.

Appellant Earl Scudamore, doing business under the trade name Superior Acid

failed. The truck rolled back down the hill, out of control, throwing Horton out and causing his injuries.

An inspection of the truck after the wreck revealed the drive shaft was completely twisted in two pieces and that the brake line was also punctured, allowing brake fluid to be released preventing the brakes from operating.

Moody settled Horton's claim before trial. No mention is made in the briefs concerning Scudamore's cross-claim against Moody.

First, we should discuss appellant's contention he was entitled to a "regular" jury trial. The circuit court empanelled an "advisory" jury. And from the best information we can glean from the record, the jury used by the trial court was from the regular panel, was accepted according to usual procedure, was fully instructed by written instructions and made the customary verdict as distinguished from verdicts containing only answers to interrogatories. Nevertheless appellant contends the trial court erred in overruling his motion for a regular jury trial.

On July 1, 1966, appellant filed amended answer wherein he alleged that Moody's negligence or contributory negligence caused plaintiff's injuries. His demand for a jury trial was made on July 9, 1966. The trial was begun on July 11, 1966.

The right to jury trial in civil cases is controlled by CR 38.01 and 38.02. The latter rule provides that the demand for jury trial must be made "not later than 10 days after the service of the last pleading directed to such issue."

■ The demand was made within 10 days after the filing of amended answer on July 1, 1966, but appellee contends that appellant's original answer contained a general denial and that the filing of an amended answer alleging that Moody alone was negligent was unnecessary, was fruitless, and was only for the purpose of attempting

to bring his later demand for jury trial within the ten-day provision of the code. With this theory we are inclined to agree. In Clay's Kentucky Practice, CR 38.02, Author's Comment 3, page 523, appears the following: "The time is not extended as to original issues by raising new ones in a subsequent pleading." We recognize that the courts indulge every presumption against waiver of the right to trial by jury. Rodenbur v. Kaufmann, 115 U.S.App.D.C. 360, 320 F.2d 679.

The counterpart of CR 38.02 in the Federal Rules of Civil Procedure has been interpreted in Connecticut General Life Insurance Company v. Breslin, 5 Cir., 332 F.2d 928 (1964), a case in which the pleadings were practically identical to those in the present case. It was written in Breslin at page 931:

> "The original answer of the appellant, which did not contain a demand for a jury trial, contained a denial of the allegations of the appellee's complaint that the insured died as a result of accidental means within the policy coverage. The amended answer, which contained a demand for a jury trial, was different from the original answer only by the addition of an affirmative allegation that the death of the insured was not effected through accidental means within the policy provisions, and that death was effected by causes reasonably foreseeable on the part of the insured. *The amended answer did not raise any issues which were in any material way different from those presented by the original answer. In such a case the waiver originally made remains effective and the subsequent demand is ineffective.*" (Emphasis added.)

■■ To summarize: (1) We conclude appellant enjoyed a "regular" jury trial from every practical consideration, notwithstanding it was designated an "advisory" jury; (2) trial by jury was waived.

Appellant next urges that he was entitled to a directed verdict on the theory

the evidence on negligence was too speculative and on the theory Horton assumed the risk.

First we think it clear from the evidence that two events concurred to cause the injuries: (1) the twisting apart of the drive shaft; and (2) the breaking of the brake line, leaving the truck on the hill without brakes. There was evidence that both the drive shaft and the brake line were rusty and corroded from leakage of acid (hydrochloric or muriatic acid) from the tank. Whether this corrosion weakened the drive shaft or brake line sufficiently to bring about the breakage is uncertain. Appellee also hints that the breaking of the drive shaft was caused by the unscientific extension of the same to accommodate the longer wheel base. Horton stated Scudamore admitted on a visit to the hospital that "you know I think—what I am afraid of is that acid leaked and got on the brake and maybe the shaft. What happened to the brakes, I am afraid, is the acid got on it and deteriorated the line and that is what caused the accident." This Scudamore denied.

The witness Compton said the brake line "was very rusty—more rusted than you usually see"; that "it was split out—it looked like pressure had pushed it up."

■ Appellant admitted that "we had a few minor leaks around this connection from the bottom of the tank in the front"; that they threw cornmeal in the tank at times to stop the leaks. In any event, those were jury questions which were submitted by appropriate instructions.

In Crawford v. Alexander, Ky., 259 S. W.2d 476, a brake failure case, this court said:

" 'The jury are as much the judges of the inferences and conclusions to be drawn from the proven facts as they are of the facts themselves and if the inferences or conclusions drawn by them are such as might be drawn by a reasonable mind, the jury's finding, based on such inferences or deductions, should not be disturbed even though the inferences or deductions may not have been those we would have drawn had we been sitting as triers of fact.' "

The following cases cited by appellant are not similar factually and are of little help: Jones v. Hinkson, Ky., 313 S.W.2d 415 (plaintiff tripped in an underwater hole in a swimming area); Hobson v. Turner, 299 Ky. 342, 185 S.W.2d 550 (tire blow out); Louisville & N. R. Co. v. Adams' Adm'x, 301 Ky. 7, 190 S.W.2d 690, and McKamey v. Louisville & Nashville Railroad Co., Ky., 271 S.W.2d 902 (injuries at railroad crossing); Tinnell v. Commercial Carriers, Inc., Ky., 383 S.W.2d 914 (driver racing with another vehicle); Klingenfus v. Dunaway, Ky., 402 S.W.2d 844 ("wobbly" marks on gravel road, as evidence of defective steering gear); and Luckett v. Adolphus Cleaners, Ky., 262 S.W.2d 191 (oxalic acid crystals found in plaintiff's hat band after having been cleaned by defendant, causing skin irritation and discoloration).

On the question of Horton's "assumption of risk," which we prefer to call contributory negligence, it is true Horton knew the difficulty experienced by vehicles in "making" the hill. In fact, as they approached the hill, Horton asked Franklin whether he had a good truck and made the observation that "this is a pretty good hill." We just wonder whether Horton had a right to assume that Franklin knew the weight he was carrying and knew the capabilities of his truck.

We are not inclined to say as a matter of law that Horton was guilty of contributory negligence.

Instruction 1–a and 1–b is questioned by appellant on the ground that said instruction failed to inform the jury that before it could find against Scudamore on the defective brake theory it must find that he knew or should have known of the defective conditions.

It is provided by CR 51 that "no party may assign as error the giving or the failure to

give an instruction, unless he objects thereto before the court instructs the jury, *stating specifically the matter to which he objects and the grounds of his objections."* (Emphasis added.)

The only reasonable objection made by appellant to the instruction in question was made at the conclusion of plaintiff's evidence and incorporated in his objection to the instructions at the close of the case. Here it is:

"Earl Scudamore moves the court for a directed verdict in his favor on the question of liability on the following grounds: * * * 1-a There has been no evidence that the defendant negligently maintained his truck. Quite to the contrary. The proof has been he did have periodic maintenance checks of his truck which is shown by Scudamore's deposition read by the plaintiff."

■ This objection merely states Scudamore's theory that the only evidence on the question of maintenance and inspection was his own evidence. It should be remembered, however, in this connection that there was evidence of rust and corrosion from leaking acid both on the drive shaft and on the brake line, and the jury inspected both. Anyway, we do not consider the objection to have stated specifically the matter to which he objected and the grounds of his objections as required by the rule.

■ True appellant made a proper objection to this instruction in his motion for judgment notwithstanding the verdict, but this came too late. See Young v. De Bord, Ky., 351 S.W.2d 502, and CR 51.

In *Young,* supra, it was written:

"The record discloses they objected to the giving of these instructions upon the ground there 'is no evidence in the record' upon which to base them. On this appeal they undertake to point out specific defects which are raised here for the first time, and this brings up the question of whether they can assign one reason for objecting to an instruction in the trial court and a different one on this appeal.

* * *

"Obviously, CR 51 condemns such a practice and, in consequence, we must hold they cannot now be heard on these matters."

The objection was not seasonably made so as to enable the trial court to consider appellant's theory.

■ In Swope v. Fallen, Ky., 413 S.W.2d 82 (1967), the rule of law that the owner of a motor vehicle has the duty to exercise ordinary care to see that the brakes are maintained in a safe condition was reaffirmed. Really the brake on a motor vehicle is the most important safety mechanism; and the older the vehicle grows, the greater the duty to inspect becomes. More care is required to keep an old vehicle going. The truck in question was a 1959 model. It had been altered, and the parts that failed were rusty and corroded. Furthermore, the product transported by the truck was inherently dangerous. The danger of operating an acid truck of such age and condition of use without safe brakes is obvious.

Appellant next contends that error was committed by the trial court when Dr. Stanley Collis, an orthopedic surgeon of Louisville, Kentucky, was permitted to read (by deposition) to the jury reports from Dr. George M. Lawson, an x-ray specialist, and Dr. Thomas M. Marshall also of Louisville.

■ Appellant is in a poor posture to object to the report of x-ray examination by Dr. Lawson due to the fact that filed in this record is a "stipulation" which contains this certificate by C. David O'Donnell, notary public:

"There appearing at the Louisville Methodist Evangelical Hospital, Louisville, Jefferson County, Kentucky, on June 21, 1966, at 4:00 P.M., Mr. Henry T. Merritt, Counsel for Plaintiff, Mr. David M. Howerton and Mr. Norman A. Curtis,

Counsel for Defendants, whereupon the following stipulation was made: STIPULATION: The Plaintiff and Defendants and each of them by Counsel do stipulate that the attached documents are copies of original records pertaining to Paul W. Horton, on file at the Methodist Evangelical Hospital and that both plaintiff and defendants each have a right to introduce said documents and/or read said documents at the trial of the accident to be heard as evidence in the above styled action. Mr. Curtis: All right? Mr. Merritt: Agreed. Mr. Howerton: Agree to that. Reporter's note: Whereupon the following records were furnished to the reporter by the assistant medical record librarian attached hereto."

Among those records thus agreed to be filed and used on the trial was a report of Dr. George M. Lawson, the x-ray man. This report contains all the information about which Dr. Collis referred in his deposition. So much for the objection as to the report of Dr. Lawson.

█ The objection to the reading by Dr. Collis of a letter or report from Dr. Marshall presents a more serious question for it was in effect the taking of evidence of Dr. Marshall without an opportunity by Scudamore to cross-examine. It was improper, but let us see whether it was prejudicial. Here is the material part of the report of Dr. Marshall read to the jury by Dr. Collis:

"Impression: This man has sciatica which apparently is post-traumatic and is due apparently to injury of nerve roots comprising the sciatic nerve. It is extremely doubtful that he has a protruded intervertebral disc explaining part of his symptomatology, yet I believe that a Myelogram should be done to rule out any intraspinal pathology. Fractures of the transverse processes could have produced enough changes in or around the nerve roots to produce his present symptoms."

Dr. Marshall's reference to "protruded intervertebral disc" is not unfavorable to appellee's contention, as is evidence by the testimony of Dr. George C. Cheatham, his chief doctor after his injury and during his convalescence, and about which we shall have more to say hereafter. However the report of Dr. Marshall to the effect that Horton "has sciatica" and "fractures of the transverse processes could have produced enough changes in or around the nerve roots to produce his present symptoms" is strong evidence in support of appellee's theory as to the consequence of his injury. Let us examine the evidence with the question in mind, was this evidence merely cumulative?

Prior to the injury, appellee was a "tall, thin" man, 44 years of age, in good health. He was confined to the hospital 26 days beginning August 27, 1964. His loss of earnings was approximately $4500 (15 months at $300). Dr. George C. Cheatham of Greensburg was appellee's doctor while he was in the hospital and for some time thereafter. Dr. Cheatham referred appellee to Dr. Collis. We quote from the testimony of Dr. Cheatham:

"A. Mr. Horton was admitted to the hospital on 8–27–64; he was discharged on September 22nd 1964.

\* \* \* \* \* \*

"A. \* \* \* I might mention also that Mr. Horton had quite a bit of trouble in the hospital. He develop a paralytic ileus while in the hospital which in lay terms, this is where the bowels don't function. He had to have tubes put in his stomach and we had to feed him with intravenous fluids, and he progressed along real well I felt for the amount of injury he incurred.

\* \* \* \* \* \*

"A. I discharged him on September 22nd, 1964; I again saw Mr. Horton on October 6, 1964, I saw him again on October 20, 1964; on November 2, 1964; on November 13, 1964, on Nov. 20, 1964; on December 29, 1964; on July 19, 1965; on July 31, 1965; on August 13,

1965; on November 1, 1965; on November 27, 1965; on March 15, 1966; and on April 23, 1966.

\* \* \* \* \* \*

"A. Well, I felt that the reason this patient was experiencing muscle spasm was due to some irritation of these muscles.

\* \* \* \* \* \*

"A. I have not observed his footdrop to show any improvement whatsoever since I first noted it.

\* \* \* \* \* \*

"A. The irritation which is apparently causing the neuropathy in his left leg would have to be alleviated and then exercises could re-develop the leg."

The evidence of Dr. Collis although rambling and somewhat indecisive supports Dr. Cheatham. Dr. Collis was asked and answered as follows:

"Q. Doctor, on your previous deposition there was some doubt in your mind as just precisely what was the cause of these symptoms. You seem to think there was a possibility of nerve root irritation and some possibility of a ruptured disc in the back. Would your examination during this past three weeks lead you to any firm conclusion as at what would be causing these symptoms?

"A. Well, at first I think still, his nerve root irritation, I don't know for sure, I would think that this is on the outside of the vertebra instead of a ruptured disc. Of course I cannot be positive about it, but that is my opinion. I think my opinion was substantiated with having Dr. Marshall see him again, and he did not at that time recommend a myelogram.

"Q. Is this nerve root irritation sometimes referred to as a lesion?

"A. Yes, lesion, it's some difficulty with the skeletal system, so I guess you call it lesion."

We conclude that Dr. Marshall's report was merely cumulative to appellee's other evidence. Perhaps a layman would have arrived at the same conclusion as did Dr. Marshall's report. Furthermore, appellant makes no argument that the verdict is excessive. The only evidence offered by appellant was the reading of the deposition of Dr. Earl W. Roles, an orthopedic surgeon, but who belongs to no medical society devoted to the practice of orthopedic surgery. Dr. Roles saw appellee only once, on February 28, 1966. He took x-rays and found no disability from the injury although he stated his x-ray disclosed "a united old fracture of the right transverse process of the third lumbar vertebrae" and "hypertropic arthritis of the fourth and fifth lumbar end of the lumbosacral joint," which was substantially the findings of Dr. Marshall whose report by Dr. Collis we have heretofore discussed.

Appellant's final argument relates to improper argument by counsel for appellee and the trial court's exclusion of evidence pertaining to the settlement of Horton's case against Moody.

Here is what occurred in regard to appellant's contention that "counsel for appellee told the jury that Judge Bertram had told them Horton had made a case."

Argument of William A. Miller, attorney for appellee:

"This case, the defense here is—you haven't proved your case, as Judge Bertram says you have—

"Henry Triplett: Objection.

"Judge Bertram: I am going to sustain the objection. This is not a proper argument. The jury is not to consider that. (Mr. Miller continuing.) The instructions tells you that Scudamore was negligent, which was the cause of this accident."

It is concluded the admonition of the trial judge sufficiently counteracted any adverse effect the remarks of Mr. Miller may have had on the jury.

The remaining contention that the trial court erred in excluding evidence showing the amount of settlement between Horton and Moody is entirely without merit.

The judgment is affirmed.

All concur.