[No. 295-2.    Division Two.    July 14, 1971.]

HAROLD F. BURNETT et al., *Respondents*, v. CHARLES HUNT et al., *Appellants.*

*Wallace & Best* and *Philip M. Best,* for appellants.

*Shiers, Kruse & Roper* and *Frank A. Shiers,* for respondents.

ARMSTRONG, J.—The plaintiffs, Harold Burnett and his wife, were injured as the result of an explosion caused by an allegedly defective gas oven in a used camper trailer which the plaintiffs had purchased from the defendant. The cause of action was submitted to the jury on the theories of defendant's negligence, plaintiff's contributory negligence, and the implied warranty of fitness for a particular purpose based on RCW 62A.2-315. The jury returned a verdict for the plaintiffs and judgment was entered thereon.

The issue on appeal is whether the trial court erred in denying defendant's motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. The defendant did not make any motions testing the legal sufficiency of the evidence nor did he take any exceptions to the instructions of the trial court or the court's failure to give any instructions. The thrust of defendant's argument is that "there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law." CR 59(a)(7).

When the basis for an appeal is whether the trial court erred in denying post-trial motions testing the sufficiency of the evidence to support the verdict, the evidence and all reasonable inferences must be viewed and construed in the light most favorable to the party for whom the verdict is rendered. *State v. Hall,* 74 Wn.2d 726, 446 P.2d 323 (1968).

The jury could believe the following facts. During September of 1968, the plaintiffs desired to trade in their used mobile home for a used camper trailer. For this purpose Mrs. Burnett visited Hunt's Trailer Sales in Bremerton, Washington. Mr. Hunt decided that he would accept the plaintiff's mobile home and he told Mrs. Burnett to look around the lot to see if there was a used camper trailer which she liked.

At the next visit both Mr. and Mrs. Burnett came to the lot and they selected a used Fleetcraft camper trailer. Mr. Hunt said, "It is all ready to go, just hook on to it and take off." The plaintiffs made a cursory inspection of the outside and inside of the trailer but did not test the stove burners or the oven burners to check if they were functional.

The defendant had been in the trailer business for about 5 months before this sale to the plaintiffs. He testified that he never made any examinations for defects of the used trailers coming onto his lot, but that he checked only for cleanliness. In this case, the defendant knew that this particular camper trailer had been rented out by its former owner to vacationers for short periods of time.

After having the camper trailer at home for about a week, the plaintiffs discovered that the stove burners would not light. Mrs. Burnett testified that she then asked Mr. Hunt about instructions for lighting the stove burners. Mr. Hunt told her that he had not inspected that particular camper trailer but that they all are principally the same. He told her that there was a valve underneath the top stove burner which had to be turned on before the gas went to the individual stove burners. After opening that valve the Burnetts tested each of the stove burners for a few moments and found that they operated satisfactorily.

The Burnetts had also looked inside the oven on one occasion and noticed that a new broiler pan, still enclosed in its package, was inside the oven. The plaintiffs testified they were not interested in the oven because they did not intend to do any baking.

The plaintiffs had no occasion to use the trailer again until the night of October 12, 1968 when they went on a hunting trip. Upon arriving at the campsite, Mr. Burnett opened the main valve on the outside gas storage tank and lit the gas light on the wall of the camper trailer. The gas light was turned off about 10 minutes later when the plaintiffs retired for the night.

Several minutes thereafter Mr. Burnett thought he smelled gas, got up, and turned on a flashlight to check the stove. Being satisfied upon checking the stove burners that they were properly turned off, he opened the oven door. At that precise moment there was a tremendous explosion, which set the inside of the trailer on fire and the plaintiffs received burns.

After the plaintiffs recovered sufficiently from their injuries, they checked the trailer and found a valve and a gas line located in one of the cupboards. The absence of these and other parts of the oven permitted gas to enter the oven compartment whenever the main valve on the outside storage tank was in an open position.

Defendant's argument is divided into three parts and we find it desirable to answer each individually.

First, the defendant argues that the verdict is contrary to the law because there is no duty upon a dealer in used trailers to make any inspection for defects which would make such a product dangerous. We cannot agree.

The theory of negligence was submitted on the stock negligence instruction, negligence being defined as the failure on the part of the defendant to exercise reasonable and ordinary care. "Reasonable and ordinary care" was defined as that degree of care which an ordinarily careful and prudent person would have exercised under the same or similar circumstances or conditions.

We are faced with the primary question of whether a dealer in used camper trailers has a duty to exercise reasonable care in inspecting a camper trailer to ascertain whether there are any patent defects which could be deemed dangerous to anyone who used the camper trailer.

Both plaintiff and defendant have relied upon *Bock v. Truck & Tractor, Inc.*, 18 Wn.2d 458, 139 P.2d 706 (1943). That decision, written by Justice Steinert, imposed a manufacturer's duty upon a secondhand motor vehicle dealer who undertakes to overhaul and recondition an automobile for sale. In that case the court strongly relied upon *Flies v. Fox Bros. Buick Co.*, 196 Wis. 196, 218 N.W. 855, 60 A.L.R. 357 (1928), and quoted from a portion of the *Flies* case at page 471:

"In a note to be found in 42 A. L. R., beginning on p. 1243, at p. 1250 the author submits the following as a sound rule of law, supported by numerous, although not [at the time of the rendition of the opinion, in 1928] the weight of, authorities:

" 'Where, in the exercise of ordinary sense, the seller of an article must know that if it is defective it will be imminently dangerous to persons who he knows will come in contact therewith, a duty rests upon such seller to use ordinary care to ascertain the condition of the article and see that it is safe, especially where, by representations or warranties that the article is safe, he induces the sale; and if he fails to exercise ordinary care to ascertain the safety of the article, and as a result he actually sells it in an imminently dangerous condition, he is liable for personal injuries proximately resulting therefrom, at least, to that class of persons who he knows must come in contact with the article.'

This rule was again cited with approval in *Witt Ice & Gas Co. v. Bedway*, 72 Ariz. 152, 231 P.2d 952 (1951). Again the rule was not recognized as the majority rule at the time, but was considered to be the better rule. Examination of that case and other cases leads us to believe that it is the modern trend and the logical rule. In *Witt* the Arizona Supreme Court held that the seller of a used regulator in a beer keg was negligent in failing to discover a defect which caused a beer keg to explode. In that case the seller sold the beer keg as new and failed to ascertain by reasonable inspection that the regulator had been used. The seller dealt in both new and used beer kegs. At page 157 the court stated:

We think it may be reasonably inferred from all the facts that the defect was one which a reasonably prudent dealer should have discovered before placing it upon the market and delivering it to a customer. One who sells or delivers a used article which he knows to be imminently dangerous to the life or limb of another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not. Bock v. Truck & Tractor, Inc., 18 Wash.2d 458, 139 P.2d 706.

Our Supreme Court has clearly defined the duty imposed upon a seller of *new* cars in *McKinney v. Frodsham,* 57 Wn.2d 126, 356 P.2d 100 (1960). The court there accepted the following rule of law at page 129:

An automobile dealer, receiving new cars from the manufacturer, has a duty to inspect the vehicles before selling them, and is charged with knowledge of what a reasonable inspection, in the exercise of ordinary care, would disclose. The dealer is not required to dismantle the car in making such inspection, but is required to observe the vehicles as received, observe whether they operate properly, and investigate and check the operation of parts or appliances with respect to safety before delivery of the vehicles to purchasers. In making such inspection and examination, the dealer is required to utilize the peculiar opportunity and competence which a dealer in such automobiles has or should have.

An automobile dealer, who sells an automobile for use by the purchaser, his family and guests, if such automobile is in fact in a dangerous condition, is liable for injuries proximately resulting from a use of the automobile for the purpose intended, if the dealer

(a) knows, or in the exercise of reasonable care should know, that the automobile is dangerous for the use for which it is supplied, and

(b) has no reason to believe that the purchaser or others using the automobile for the intended purpose will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform the purchaser of such dangerous condition.

A dealer is not liable for injuries resulting from latent defects in an automobile sold by him which are in fact

unknown to him, and which are not discoverable by reasonable inspection.

It has been recognized that used articles are more likely to be defective than new articles and many of the patently defective conditions might be inherently dangerous to human life. The dealer is in a better position because of his competence to discover dangerous patent defects which the average customer might not discover. *Gaidry Motors v. Brannon*, 268 S.W.2d 627 (Ky. 1953); *Thrash v. U-Drive-It Co.*, 158 Ohio St. 465, 49 Ohio Op. 402, 110 N.E.2d 419 (1953); Annot., 6 A.L.R.3d 12, 43-47 (1966).

We are aware of cases holding that a retail dealer does not have the duty of inspecting articles to ascertain whether there are patent defects which make the product dangerous to human life. We believe, however, that our Supreme Court has taken a progressive step beyond that rule on a dealer's duty to inspect for patent dangerous defects in the discussion of rules of liability in *Bock v. Truck & Trailer Corp.*, *supra,* and in the ruling in *McKinney v. Frodsham, supra.* By their statements and actions they have recognized that the concept of caveat emptor, when applied to dealers in merchandise which are dangerous to human life, is inconsistent with reasonable consumer protection.

We therefore hold that where a retail dealer sells an article which is in a condition dangerous to human life, he is liable for injuries proximately resulting from a use of the article for the purpose intended if the dealer

(a) knows, or in the exercise of reasonable care should know that the article is dangerous for the use for which it is supplied, and

(b) has no reason to believe that the purchaser or others using the article for the intended purpose will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform the purchaser of such dangerous condition.

A dealer in new or used articles is not liable for injuries resulting from latent defects which are in fact

unknown to him. He is not required to dismantle the article or make a factory type of inspection. He is required to exercise reasonable care to ascertain patent defects which are dangerous to human life and which he could discover by the exercise of reasonable care.

It is evident that open gas lines into an oven which permit gas to be trapped in the oven compartment any time the main valve of the outside gas storage is open, is a patent and extremely dangerous defect.

Secondly, the defendant argues that the plaintiffs should have been held contributorially negligent as a matter of law because they did not discover the defective condition themselves.

We cannot agree.

The question of a plaintiff's contributory negligence is generally for the jury, unless the acts of the plaintiff were so palpably negligent as to preclude the possibility of a difference of opinion. *Smith v. B & I Sales Co.*, 74 Wn.2d 151, 443 P.2d 819 (1968); *Bauman v. Complita*, 66 Wn.2d 496, 403 P.2d 347 (1965).

Even though we may agree that the plaintiffs had some duty to inspect a used camper trailer in order to protect themselves from harm, we think it was a question for the jury to determine whether it was reasonable for the purchasers in this case not to find the defective condition. The jury could believe that the defendant had said that the trailer was "ready to go, just hook on to it and take off." The jury also knew that plaintiffs had looked inside the oven and did not notice anything unusual, but saw only an unused broiler pan in its original package. The jury also was aware of the fact that the plaintiffs did not intend to use the oven. We cannot say as a matter of law that all reasonable minds would conclude that the plaintiffs were negligent in failing to discover the defective condition of the gas oven. The issue of contributory negligence was properly submitted to the jury.

Thirdly, the defendant argues that there was a lack of

evidence to submit the question of implied warranty for a particular purpose to the jury.

The defendant's argument is without merit. The defendant himself submitted the only instructions on implied warranty for a particular purpose, based on RCW 62A.2-315,[1] to the jury. These were accepted by the trial court. The plaintiffs' instruction on implied warranty of merchantability based on RCW 62A.2-314,[2] was not accepted by the trial court.

Even if the instructions on implied warranty for a particular purpose were erroneous, the defendant cannot complain of the error. A party cannot submit the instructions on a certain theory of law and then when the verdict goes against him complain that there is a lack of evidence to support the giving of an instruction which he himself requested. *Vangemert v. McCalmon*, 68 Wn.2d 618, 414 P.2d

---

[1] RCW 62A.2-315 provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

[2] RCW 62A.2-314 provides: "(1) Unless excluded or modified (RCW 62A.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as

"(a) pass without objection in the trade under the contract description; and

"(b) in the case of fungible goods, are of fair average quality within the description; and

"(c) are fit for the ordinary purposes for which such goods are used; and

"(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) are adequately contained, packaged, and labeled as the agreement may require; and

"(f) conform to the promises or affirmations of fact made on the container or label if any.

"(3) Unless excluded or modified (RCW 62A.2-316) other implied warranties may arise from course of dealing or usage of trade."

617 (1966); *Helton v. St. Joseph,* 340 S.W.2d 198, 82 A.L.R.2d 1103 (Kan. 1960).

Furthermore, if anyone was prejudiced by the giving of the instruction on implied warranty for a particular purpose, it was the plaintiff and not the defendant. In order to recover under an implied warranty for a particular purpose, the buyer must show that, (1) he relied on the seller's skill and judgment to select or furnish the suitable goods, and (2) that the seller at the time of contracting has reason to know of the buyer's particular purpose and that the buyer is relying on the seller's skill and judgment. *See* Uniform Commercial Code § 2-315, Comment 1 (1962 version); 1 R. Anderson, Uniform Commercial Code 657, 658 (2d ed. 1970). This is usually much more difficult to prove than the implied warranty of merchantability, because the latter does not require reliance on the part of the buyer. *See* 1 R. Anderson, Uniform Commercial Code, *supra,* 537 *et seq.*

Judgment for the plaintiff is accordingly affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied August 12, 1971.

Review denied by Supreme Court September 21, 1971.